**Thomas John KLOS, Plaintiff,**

v.

**Thomas HASKELL, Superintendent, Cheryl Clark, Director of Shock Development, Philip Coombe, Jr., First Deputy Commissioner, and Thomas Coughlin, Defendants.**

No. 92–CV–6135.

United States District Court,
W.D. New York.

Sept. 17, 1993.

712

Thomas John Klos, pro se.

Charles D. Steinman, Asst. Atty. Gen., Rochester, NY, for defendants.

## ORDER

TELESCA, Chief Judge.

Plaintiff, proceeding *pro se*, commenced this action March 16, 1992, pursuant to 42 U.S.C. § 1983, alleging that his civil rights were violated when he was transferred from Monterey Shock Incarceration Facility ("Monterey") to Elmira Correctional Facility ("Elmira"). In orders filed November 3, 1992 and March 18, 1993, the case was referred to United States Magistrate Judge Kenneth R. Fisher, pursuant to 28 U.S.C. § 636(b)(1)(A)–(B). In a decision and order and report and recommendation filed May 11, 1993, Magistrate Judge Fisher disposed of nine pending motions. He (i) denied plaintiff's motion for the appointment of counsel, (ii) denied plaintiff's motion to amend his complaint, (iii) denied plaintiff's motion for injunctive relief, (iv) denied both plaintiff's and defendants' discovery motions, (v) recommended that plaintiff's cross-motion for partial summary judgment be denied, and (vi) recommended that defendants' motion for summary judgment be granted and the complaint accordingly dismissed.

Plaintiff requested, and was granted, two extensions of time in which to file objections to Magistrate Judge Fisher's determinations. On July 29, 1993, he filed objections to (i) the denial of his motions (1) for the assignment of counsel, (2) to compel discovery, and (3) for partial summary judgment and (ii) the granting of defendants' motion for summary judgment.

Upon a *de novo* review of the issues raised in plaintiff's objections, and essentially for the reasons stated in Magistrate Judge Fisher's thorough and well-reasoned decision and order and report and recommendation, I affirm the denial of plaintiff's motions for the assignment of counsel and to compel discovery, and I adopt his recommendation that defendants' motion for summary judgment be granted and plaintiff's cross-motion for partial summary judgment be denied.

■ In agreeing with Magistrate Judge Fisher's conclusion that plaintiff's removal from the shock camp program triggered no due process right on his part, I rely not only on the law cited by him in the report and recommendation but also on the fact that plaintiff's removal from the program was premised, not on his behavior in the course of the program, but on the circumstances of both the crimes he was charged with committing and those for which he was sentenced. Under any reading of the state regulation concerning removal from shock incarceration programs [1], whether the narrow reading advanced by defendants and adopted by Magistrate Judge Fisher, or the more expansive interpretation advanced by plaintiff, a right to a hearing on such removal is required *only* when removal is premised on a prisoner's conduct in the shock program. In this case, in removing plaintiff from the program, Commissioner Coughlin relied upon information contained in the letter of the district attorney who had prosecuted plaintiff in state court. His removal of plaintiff, in effect, constituted his reconsideration of plaintiff's prior admission to the program, based upon information not previously supplied either to him or to the committee which Commissioner Coughlin had designated to consider applications to the shock program. Neither the federal constitution nor applicable state regulation mandates a hearing prior to such removal.

■ Insofar as plaintiff's reply papers seek to raise the separate issue of the constitutionality of his transfer to the Correctional Facility at Elmira, rather than a return to the facility at which he was incarcerated prior to his admission to the shock camp,

1. *See* N.Y.Comp.Codes R. & Regs. tit. 7, § 1800.10.

such transfer provides no basis for a § 1983 claim. *See Montanye v. Haymes,* 427 U.S. 236, 241–45, 96 S.Ct. 2543, 2547–48, 49 L.Ed.2d 466 (1976); N.Y.Comp.Codes R. & Regs. tit. 7, § 100.35.

WHEREFORE, the decision and order and report and recommendation of Magistrate Judge Fisher, filed May 11, 1993, is affirmed and adopted in its entirety; defendants' motion for summary judgment is granted; plaintiff's motions for partial summary judgment and for various other relief are denied; and this case is dismissed.

SO ORDERED.

## REPORT and RECOMMENDATION DECISION and ORDER

FISHER, United States Magistrate Judge.

### I. *Background*

Plaintiff, proceeding *pro se,* commenced this action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights when he was transferred from Monterey Shock Incarceration Facility ("Monterey") to Elmira Correctional Facility ("Elmira") on April 4, 1991. He seeks injunctive, declaratory and compensatory relief.

Currently, there are nine motions pending before this court. Plaintiff filed three motions to compel defendants to respond to his interrogatories, on October 29, 1992, December 24, 1992 and March 2, 1993, respectively. In opposition to plaintiff's second motion to compel, defendants filed a motion for a protective order, pursuant to Fed.R.Civ.P. 26(c). Plaintiff's third motion to compel also contains a request for appointment of counsel. Defense counsel also filed a letter dated March 1, 1993, in opposition to plaintiff's third motion to compel, while taking no position on plaintiff's request for appointment of counsel. These matters were referred to me by Chief Judge Michael A. Telesca, by order dated November 3, 1992, pursuant to 28 U.S.C. § 636(b)(1)(A).

Also pending before this court is defendants' motion for summary judgment, filed October 29, 1992. Plaintiff filed a cross-motion for partial summary judgment in opposition to defendants' motion for summary judgment and a motion requesting leave to file a supplemental complaint. Plaintiff also has a motion for injunctive relief pending, which was filed on July 31, 1992. Chief Judge Telesca referred these remaining matters to me by order dated March 18, 1993, pursuant to 28 U.S.C. § 636(b)(1)(B).

The following constitutes my decision and order that plaintiff's motion for appointment of counsel be denied. Plaintiff's three motions to compel and defendants' motion for a protective order are denied, and dismissed as moot. It is also my report and recommendation that defendants' motion for summary judgment be granted and that plaintiff's motions for injunctive relief, to supplement his complaint, and for summary judgment be denied.

### II. *Discussion*

#### A. *Motion for Assignment of Counsel* [1]

■■■ Under 28 U.S.C. § 1915(d), the Court may appoint counsel to assist indigent litigants. *Sears, Roebuck and Co. v. Charles W. Sears Real Estate, Inc.,* 865 F.2d 22, 23 (2d Cir.1988). It is clear that assignment of counsel in this matter is within the Court's discretion. *See In re Martin–Trigona,* 737 F.2d 1254 (2d Cir.1984). The factors to be considered in deciding whether or not to assign counsel are set forth by the Second Circuit in *Hodge v. Police Officers,* 802 F.2d 58 (2d Cir.1986) and *Cooper v. A. Sargenti Co.,* 877 F.2d 170 (2d Cir.1989). However, the Court should exercise its discretion to appoint counsel in cases where the plaintiff has made "a threshold showing of some likelihood of merit." *Id.* 877 F.2d at 174.

Plaintiff's previous application for appointment of counsel was denied by Chief Judge Telesca, by order dated July 21, 1992. On

---

**1.** In a letter to the court dated February 10, 1989, plaintiff requested that his case be put on "hold" if his motion for appointment of counsel was denied. This request is denied. I find that plaintiff has thoroughly prepared for each motion—by submitting well-written, well-researched and well-argued papers in support of each motion—such that each motion may be decided on its merits.

the basis of the foregoing, I find that assignment of counsel is not warranted in this case at this time. It is plaintiff's responsibility, therefore, to retain his own attorney or to press forward with his lawsuit *pro se.* 28 U.S.C. § 1654.

### B. *Motion to Supplement Complaint* [2]

■ Plaintiff seeks to supplement his complaint with new claims relating to events that occurred in April and May of 1992, at correctional facilities other than those named in his complaint. He does not name any new defendants. As previously stated, in his original complaint, plaintiff alleged that he was unlawfully transferred from Monterey to Elmira. In his proposed supplemental complaint, plaintiff sets forth a series of incidents which allegedly occurred in retaliation for his prosecution of this § 1983 action. First, he claims that he was unlawfully transferred from Walkill Correctional Facility ("Walkill") to Washington Correctional Facility ("Washington") in violation of a DOCS policy which ordinarily does not permit transfers of inmates enrolled in college prison programs. He also contends that his mail was interfered with and that some of his legal and personal property was damaged or missing after the transfer.

■ It is clear that plaintiff is not seeking to replace his original claim with his proposed amendments.[3] Rather, he seeks to "supplement" the original complaint with new claims against the original defendants. "A supplemental pleading is designed to cover matters that occur subsequent to the filing of the complaint, but pertain to the original pleadings." *Albrecht v. Long Island Railroad,* 134 F.R.D. 40, 41 (E.D.N.Y.1991). The court may, pursuant to Fed.R.Civ.P. 15(d), permit a party, upon motion, "to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading

sought to be supplemented." *Id.* And because the plaintiff proceeds *pro se,* the court is "to construe [such] complaints liberally and to apply a more flexible standard in determining the sufficiency of a *pro se* complaint than [it] would in reviewing a pleading submitted by counsel." *Platsky v. CIA,* 953 F.2d 26, 28 (2d Cir.1991).

■ Pursuant to Rule 15(d), supplemental "relief may include the addition of new defendants and new claims, if adequately related to the originally stated claims." *McLean v. Scully,* 1991 WL 274327, at *1 (S.D.N.Y. December 9, 1991). If a "supplemental claim is filed ... before the statute of limitations has run on the claim, it makes little or no difference if the request to supplement is analyzed under Rule 15(a) or Rule 15(d)." *Soler v. G & U, Inc.,* 103 F.R.D. 69, 73 n. 7 (S.D.N.Y.1984). Thus, "[t]he standard for the exercise of discretion on a motion to supplement the pleadings is the same as that for disposition of a motion to amend a complaint under Rule 15(a), ..." *Gittens v. Sullivan,* 670 F.Supp. 119, (S.D.N.Y.1987), *aff'd* 848 F.2d 389 (2d Cir.1988); *Novak v. National Broadcasting Co.,* 724 F.Supp. 141, 145 (S.D.N.Y.1989) ("the same standards apply to motions under both these subdivisions of Rule 15"); 6A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1504, at 183–85 (2d ed. 1990) ("The distinction between amended and supplemental pleadings is sometimes ignored completely").

■ Although "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires,' " *United States v. Continental Illinois National Bank & Trust Co.,* 889 F.2d 1248, 1254 (2d Cir.1989) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)), "[g]ranting leave to amend [or supplement] is not, however, automatic." *Turner v. Niagara Frontier Transportation Authority,* 748 F.Supp. 80, 85 (W.D.N.Y.1990). Additionally, a mo-

---

**2.** During the preparation of this report and recommendation, plaintiff notified the court, by letter dated April 12, 1993 and received April 28, 1993, that he was withdrawing his motions to amend the complaint and for injunctive relief.

**3.** "An amended pleading is one which clarifies or amplifies a cause of action which can be identi-

fied with certainty as the same cause of action originally pleaded or attempted to be pleaded, and it is a perfection of an original pleading rather than the establishment of a new cause of action." *Superior Mfg. Corp. v. Hessler Mfg. Co.,* 267 F.2d 302, 304 (10th Cir.1959), *cert. denied,* 361 U.S. 876, 80 S.Ct. 139, 4 L.Ed.2d 114 (1959).

tion to supplement or amend may not be granted if it prejudices the opposing party. *Albrecht v. Long Island Railroad,* 134 F.R.D. at 41.

■ As the following discussion indicates, however, the new claims relating to the events at Washington and Walkill do not "[arise] out of the conduct, transaction or occurrence set forth ... in the original pleading ..." Fed.R.Civ.P. 15(c)(2). To add new claims under this "relation back" provision of Fed.R.Civ.P. 15(c), the plaintiff must show that the following requirements have been met:

(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in making its defense; (3) the party must or should have known that, but for a mistake concerning its identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed limitations period.

*Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986). *See Afrika v. Selsky,* 750 F.Supp. 595, 599 (S.D.N.Y.1990) ("a new claim will relate back to the date of filing the original complaint if plaintiff's amended complaint meets all four prongs of the *Schiavone* test").

Plaintiff fails to meet the first *Schiavone* requirement. His original complaint alleges violations in connection with his transfer from the shock incarceration facility at Monterey to the correctional facility at Elmira in April, 1991. His proposed supplemental complaint discusses events that occurred a year later at two entirely different correctional facilities—Walkill and Washington. Plaintiff fails to establish any nexus between the events alleged in his original complaint and those alleged in his proposed supplemental complaint, or that they arose "out of the same conduct or occurrence as those in the original pleading." *Gleason v. McBride,* 869 F.2d 688, 693 (2d Cir.1989). Not only does he fail to show how the officials at Monterey are responsible for his transfer from Wash-

ington to Walkill, he alleges two very different claims in each complaint. His original complaint alleges a transfer without due process, and his proposed supplemental complaint alleges an unlawful transfer in violation of a prison regulation against transferring inmates enrolled in prison college programs. No violations of his due process rights are alleged in connection with the latter transfer. Although the proposed supplemental complaint contains allegations of retaliation, he fails to connect these actions with the named defendants. Thus "[t]here appears to be no linkage between" the allegations set forth in each complaint. *McLean v. Scully,* 1991 WL 274327, at *1. Because "plaintiff's motion to supplement the original complaint fails to satisfy Rule 15(d) in that the subsequent action is unrelated to the original complaint," *Albrecht v. Long Island Railroad,* 134 F.R.D. at 41, plaintiff's motion to supplement the complaint is denied.

### C. *Motion for Injunctive Relief*[4]

■ Plaintiff filed a motion July 16, 1992, seeking injunctive relief for the allegations set forth in his proposed supplemental complaint. Since that time, however, plaintiff was transferred to Cayuga Correctional Facility, and thereafter to Oneida Correctional Facility, where he is currently incarcerated. Because plaintiff has been transferred to at least two different correctional facilities since the time he filed the motion, his request for injunctive relief arising out of the allegedly wrongful conduct at Walkill and Washington Correctional Facilities is now moot. *Young v. Lane,* 922 F.2d 370, 373–74 (7th Cir.1991); *Martin v. Davies,* 917 F.2d 336, 339 (7th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2805, 115 L.Ed.2d 978 (1991); *Young v. Coughlin,* 866 F.2d 567, 568 n. 1 (2d Cir. 1989), *cert. denied,* 492 U.S. 909, 109 S.Ct. 3224, 106 L.Ed.2d 573 (1989); *Beyah v. Coughlin,* 789 F.2d 986, 988 (2d Cir.1986); *Washington v. James,* 782 F.2d 1134, 1137 (2d Cir.1986); *Clarkson v. Coughlin,* 783 F.Supp. 789 (S.D.N.Y.1992). And because he fails to show a "demonstrated probability" that he is likely to be retransferred and subject to the same alleged conduct, he can-

---

4. *See supra* note 2.

not escape the mootness of his motion for a preliminary injunction. *Martin v. Davies,* 917 F.2d at 339 (quoting *DeMallory v. Cullen,* 855 F.2d 442, 449–50 (7th Cir.1988) (Easterbrook, J., dissenting) (quoting *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975)). It is of no consequence that "there is nothing in the record to show that he *will not* end up back" at Walkill or Washington. *Id.* 917 F.2d at 339 (emphasis in original) (an allegation of this sort "will not do" to keep his motion alive). Plaintiff, of course, has not even addressed this possibility in his motion papers. His motion for injunctive relief is therefore moot and dismissed as such.

### D. *Motions for Summary Judgment*
#### 1. *Discovery motions*

At the time defendants moved for summary judgment and dismissal of the plaintiff's complaint, the plaintiff had filed his first motion to compel. In opposing the summary judgment motion, plaintiff cross-moved for partial summary judgment and asked that his discovery request be granted. He subsequently moved two more times for the same discovery—defendants' responses to his interrogatories.[5] Plaintiff's motions to compel will be treated as requests to hold the motions for summary judgment in abeyance until discovery is completed.

■■■ Summary judgment may be granted if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Therefore, this court must first determine whether, in fact, there are "genuine issue[s] as to any material fact" which will preclude a decision on the merits of the summary judgment motions. *Id.* In doing so, the court is aware that in *pro se* cases, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.

1988). When the *pro se* plaintiff is unaware of the requirement of Rule 56(e) that he or she must file affidavits which show a genuine issue of fact, "it is inequitable, without a more explicit warning," to enter summary judgment against that plaintiff. *Id.* In this case, plaintiff's knowledge of the requirements of Rule 56(e) is conclusively established by his timely response to defendants' summary judgment motion. Plaintiff was thus fully aware of his obligations under Rule 56.

A review of plaintiff's interrogatories reveals that they relate only to the issue of his allegedly unlawful transfer from Monterey to Elmira. This is the sole cause of action alleged in his complaint. I find this to be so, despite plaintiff's contention that his cross-motion is for *partial* summary judgment. Although it is conceivable that plaintiff originally moved for partial summary judgment on the assumption that his motion to supplement the complaint would be granted, this motion has been denied. *See* Part III–B, *supra.* Thus, only the due process claim in connection with his transfer out of the Monterey Shock Incarceration Facility remains for this court's consideration.

■■■ To oppose a motion for summary judgment on the ground that discovery is outstanding, "Fed.R.Civ.P. 56(f) provides nonmoving parties with a mechanism to stay the motion pending the necessary discovery." *Bank of America National Trust and Savings Assoc. v. Envases Venezolanos, S.A.,* 740 F.Supp. 260, 269 (S.D.N.Y.1990), *aff'd* 923 F.2d 843 (2d Cir.1990); *Dubied Machinery Co. v. Vermont Knitting Co., Inc.,* 1992 WL 142044, at *5 (S.D.N.Y. June 11, 1992) ("If inadequate discovery prevents presentation of facts necessary to oppose a summary judgment motion, Rule 56(f) allows a court to deny summary judgment or order a continuance until discovery is complete"). The Second Circuit holds that

the opponent of a motion for summary judgment who claims to be unable to produce evidence in opposition to the motion [is] to file an affidavit pursuant to Rule 56(f) explaining:

---

5. A duplicate copy of plaintiff's interrogatories was filed and docketed on December 24, 1992.

1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and

2) how those facts are reasonably expected to create a genuine issue of material fact; and

3) what efforts the affiant has made to obtain those facts; and

4) why those efforts were unsuccessful.

*Burlington Coat Factory Warehouse Corp. v. Esprit de Corp,* 769 F.2d 919, 926 (2d Cir. 1985); *Hudson River Sloop Clearwater, Inc. v. Dept. of Navy,* 891 F.2d 414, 422 (2d Cir.1989) (same).

■ Construing plaintiff's papers liberally, *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Onwubiko v. United States,* 969 F.2d 1392, 1397 (2d Cir.1992), I find that plaintiff filed an affidavit, pursuant to Fed.R.Civ.P. 56(f). In his letter to the court dated November 12, 1992, plaintiff cites Rule 56(f). In this letter, as well as in the other papers plaintiff submitted in support of his discovery motions, plaintiff adequately explains the nature of the discovery sought, his efforts to obtain the discovery and why these efforts have been unsuccessful. *See, e.g.,* Requested Answers to Interrogatories to be Deemed True; Letter Response to Defendants' Opposition to Plaintiff's Motion to Compel, at 2 (plaintiff "requires the answers to these interrogatories in order to provide an effective opposition to the defendants' motion for summary judgment"). Nowhere in his papers, however, does plaintiff explain "how th[e]se facts are reasonably expected to create a genuine issue of material fact," *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp,* 769 F.2d at 926. I find this to be a crucial omission which precludes this court from granting plaintiff's motions to compel and from holding the motions for summary judgment in abeyance.

There is, however, an even more compelling reason for finding that there are no genuine issues of material fact relating to plaintiff's due process claim as it is set forth in his complaint. Defendants contend that, by virtue of filing a cross-motion for summary judgment, "plaintiff has implicitly acknowledged that there are no material issues of fact to be litigated." Affidavit in Support of Motion for Protective Order, ¶ 7. In the circumstances here, I agree. Indeed the plaintiff concedes that no issues of material fact exist in regards to his cross-motion for partial summary judgment:

> [P]laintiff acknowledge[s] that the[r]e are no material issues to be litigated in reference to an inmate's liberty interest in participation in SHOCK. This is just a matter of the interpretation of the applicable laws.

Plaintiff's Letter Response to Defendants' Motion for a Protective Order, dated January 8, 1993, at 1.

Accordingly, I find that

> [b]y moving for summary judgment the plaintiff has conceded that he has completed his discovery ... and implicitly avers that there is no triable issue of fact which prevents this court from granting summary judgment in his favor.

*Hendrix v. Herman,* Decision and Order, No. 91–CV–6178T, 1992 WL 551144, at 8 (W.D.N.Y. March 30, 1992) (Telesca, C.J.) (quoted in Defendants' Affidavit in Support of Summary Judgment Motion, ¶ 7). In fact, plaintiff exceeds the standard in *Hendrix* by explicitly stating that no material issues of fact exist regarding the issue of whether he had a liberty interest in remaining in the Shock Incarceration program at Monterey.

Because it is clear that there are no material issues of fact in regards to the pending summary judgment motions, this court can now turn to the merits of plaintiff's claim, as set forth in his complaint, and decide the motions for summary judgment as a matter of law. Accordingly, plaintiff's motions to compel and defendants' motion for a protective order are denied and dismissed as moot.

The issue before this court is whether the plaintiff had a liberty interest in remaining in the Shock Incarceration Facility at Monterey. If the answer is yes, the issue then becomes whether he was deprived of that liberty interest without due process of law when he was transferred out of Monterey to Elmira Correctional Facility on April 4, 1991. *See Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908,

104 L.Ed.2d 506 (1989) ("We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State, [citation omitted]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient"); *Vukadinovich v. Board of School Trustees of Michigan*, 978 F.2d 403, 410 (7th Cir.1992) ("Evaluating these claims therefore requires a two-step inquiry: we determine *initially* whether there was a deprivation of a protected interest and, *if so,* we *then* ascertain whether the procedures attendant upon the deprivation were constitutionally sufficient") (emphasis supplied); *Pardo v. Hosier*, 946 F.2d 1278, 1282 (7th Cir.1991) ("In evaluating due process claims, a crucial distinction must be made between the substantive right and the procedure formulated to prevent its deprivation"); *Russell v. Coughlin*, 910 F.2d 75, 77 (2d Cir.1990) ("two threshold issues presented are whether [plaintiff] possessed a liberty interest, ..., and if he did, whether he was deprived of this interest without due process").

### 2. *Facts*

The essential facts are not in dispute.[6] On September 24, 1990, plaintiff was convicted by a jury of burglary and criminal mischief. He was thereafter sentenced to concurrent sentences of from two to six years and from one to three years, respectively. On December 28, 1990, the plaintiff was transferred from the Downstate Correctional Facility to the Lakeview Shock Incarceration Correctional Facility ("Lakeview"). Between December 28, 1990 and January 7, 1991, he was screened "at least three times" for participation in the Shock program. Plaintiff's Affidavit in Support, at ¶ 8. Having apparently been determined eligible, plaintiff "was given the opportunity to participate in the Shock Incarceration Program." *Id.* On January 7, 1991, he signed a document entitled "Shock Incarceration Program Memo of Agreement." *See* ·Steinman Affidavit, Exh. A. This agreement sets forth the conditions that the plaintiff agreed to abide by in order to participate in the Shock program. The provisions that are pertinent to this discussion are as follows:

3. I promise that I shall abide by all the conditions specified in this agreement and all other conditions and instructions given to me by any representative of the Department of Correctional Services and will be subject to removal for failure to do so.

\* \* \* \* \* \*

I accept the foregoing and agree to be bound by the terms and conditions thereof. I understand that my participation in the program is a privilege that may be revoked at any time at the sole discretion of the Commissioner. I understand that I must successfully complete the entire program to obtain a certificate of earned eligibility upon the completion of said program, and in the event that I do not successfully complete said program, for any reason, I will be transferred to a nonshock incarceration facility to continue service of my sentence.

I have read and understand the above Memo of Agreement, and I agree to fully abide by the terms of the memo.

*Id.* (boldface type in original).

On January 29, 1991, plaintiff was transferred from the Lakeview Shock facility to the Monterey Shock facility. According to defendants' statement of facts, which plaintiff does not controvert, the Nassau County District Attorney, Dennis Dillon, Esq., wrote to defendant Coughlin, by letter dated March 27, 1991, to express "his vigorous opposition to the plaintiff's participation in the shock incarceration program ..." Defendants' Memorandum of Law, at 2. In this single-spaced, three-page letter, attached as Exhibit A to defendant Coughlin's affidavit, Mr. Dillon presented defendant Coughlin with a history of the plaintiff's crimes, including their number and severity, as well as the difficulties his office encountered in the investigation and prosecution of the plaintiff's crimes.

---

**6.** The stated facts are derived from plaintiff's Complaint, his Affidavit and Memorandum of Law in support of his motion for partial summary judgment, and from defendants' Memorandum of Law, submitted in support of their motion for summary judgment.

He also provided defendant Coughlin with his personal opinion of the type of person he believed the plaintiff to be. Mr. Dillon concluded by requesting plaintiff's removal from the Shock program and his "remittal to a maximum security facility." On April 4, 1991, defendant Coughlin wrote back to Mr. Dillon to inform him that, after reviewing the plaintiff's record, defendant Coughlin found "sufficient material in Mr. Klos's record to convince me that he is not a suitable candidate for the [Shock] program" and that the plaintiff was "no longer in the Shock Incarceration program, and will therefore be required to serve his entire minimum term before his first application for parole." *See* Coughlin Affidavit, Exh. B. That same day, plaintiff was transferred out of the Monterey Shock program into the Elmira Correctional Facility.

### 3. *The Parties' Arguments*

Plaintiff states that his due process rights were violated in connection with this transfer as follows:

> I was not given any reason as to why I was being removed, I was not given any opportunity to refute the reason(s) I was being removed from the Shock Incarceration Program, I was not given the opportunity to call witnesses on my behalf, I was not afforded any kind [of] written explanation and I was not in violation of any of the rules or regulations of the facility, department or state.

Plaintiff's Affidavit in Support, ¶ 11. Plaintiff argues that

> continued participation in the New York State Department of Correctional Services' Shock Incarceration Program by a statutorily eligible inmate who has been selected for and who has agreed to participate in the program is a liberty interest protectable by the Fourteenth Amendment. Therefore, when an inmate is being removed from the shock incarceration Program who has met all of the statutory obligations, ..., he/she is entitled to ... minimal due process protections ...

Plaintiff's Memorandum of Law, at 16. Plaintiff contends that New York Corrections Law Article 26–A, the statute governing New York State's shock incarceration programs,

"is by no means clear that the Commissioner may, for any reason whatsoever remove an inmate from participation in the program[,]" although he acknowledges Article 26–A's provision that "the commissioner may *at any time* remove an inmate from the program." *Id.* at 8 (emphasis supplied by plaintiff). He maintains that the Commissioner's discretion to remove an inmate from the shock incarceration program is not absolute, and that it " 'may be exercised only within established parameters,' " *Id.* at 11 (quoting *Tracy v. Salamack,* 572 F.2d 393, 395 n. 9 (2d Cir. 1978)). He adds that "the presence of discretion ... does not negate the possibility that a state-created entitlement to participation in the Shock Incarceration Program, may exist ..." *Id.* at 7. Plaintiff's underlying concern is that, as a consequence of being unable to successfully complete the program, he was denied the opportunity to receive a certificate of earned eligibility. *See* Memorandum of Law, at 18–19.

Defendants' primary argument in response is that, under New York's statutory scheme governing shock incarceration programs,

> the plaintiff had no constitutionally created and protected right to remain at the shock incarceration facility. This conclusion is not altered by the fact that, had he been permitted to remain, he *might* have received an earned eligibility certificate and *might* have been released on early parole, since such possibilities are not entitled to constitutional protection.

Defendants' Reply Memorandum of Law, at 5 (emphasis supplied by defendants).

### 4. *New York Law Does Not Create a Protected Liberty Interest in Remaining at a Shock Incarceration Facility*

It is well settled that "[l]iberty interests protected by the Fourteenth Amendment may arise from two sources— the Due Process Clause itself and the laws of the State." *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983); *Purnell v. Lord,* 952 F.2d 679, 684 (2d Cir.1992) (same). In this case, plaintiff alleges that New York State's statutory scheme governing shock incarceration programs creates such a protectible liberty in-

terest by granting a certificate of earned eligibility to those inmates who successfully complete the shock incarceration program.

A "[s]tate has created a protected liberty interest" when it "repeated[ly] use[s] ... explicitly mandatory language in connection with requiring specific substantive predicates ..." *Hewitt v. Helms,* 459 U.S. at 472, 103 S.Ct. at 871. When reviewing a statute for explicitly mandatory language, the court should look for "specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest." *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. at 463, 109 S.Ct. at 1910. In so doing, however, the Supreme Court has cautioned that

> the mandatory language requirement is not an invitation to courts to search regulations for *any* imperative that might be found. The search is for *relevant* mandatory language that expressly requires the decisionmaker to apply certain substantive predicates in determining whether an inmate may be deprived of the particular interest in question.

*Id.,* 490 U.S. at 464 n. 4, 109 S.Ct. at 1910 n. 4 (emphasis in original). *See also Smith v. Shettle,* 946 F.2d 1250, 1253 (7th Cir.1991) (Posner, J.) ("No magic form of words is required to make a regulation mandatory; all that is required is that it be clear that if X (the substantive predicate), then Y (the specified outcome, from which the enforcement officials are not free to depart)"). Thus, "for a state regulation to create a protected liberty interest, it must contain 'language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed.'" *Purnell v. Lord,* 952 F.2d at 684 (quoting *Hewitt v. Helms,* 459 U.S. at 471, 103 S.Ct. at 871).

A review of the regulations governing New York's Shock Incarceration Program is thus in order. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1,

12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979) ("whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis"). Article 26–A of New York Correction Law, "Shock Incarceration Program for State Correctional Inmates," provides for the establishment of shock incarceration programs (N.Y.Corr.Law § 866)[7] and the procedures for selecting inmates to participate in the program (N.Y.Corr.Law § 867).

Pursuant to N.Y.Corr.Law § 867(1), "[a]n eligible inmate may make an application to the shock incarceration screening committee for permission to participate in the shock incarceration program." The screening committee then reviews the application to determine whether the "inmate's participation in the shock incarceration program is consistent with the safety of the community, the welfare of the applicant and the rules and regulations of the department, ..." *Id.* at § 867(2); *see also* 7 N.Y.C.R.R. § 1800.3(c). If it determines that the inmate's participation in the program is so compatible, then the "committee *shall* forward the application to the commissioner or his designee for approval or disapproval." N.Y.Corr.Law § 867(2) (emphasis supplied). The word "shall" plainly indicates that once the three "substantive predicates are present, a particular outcome must follow." *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. at 463, 109 S.Ct. at 1910. Specifically, the screening committee is mandated to forward the inmate's. application to the Commissioner or his designee. But "[w]hile the rules mandate *who* [i.e., the screening committee] shall make the determinations and *what* [i.e., the three criteria] shall be considered ..., they do not mandate any particular outcome with regard to the substantive predicates." *Woods v. Thieret,* 903 F.2d 1080, 1083 (7th Cir.1990) (emphasis in original). Thus, "[t]he mere fact that the rules provide specific considerations to guide the [screening committee's] decision ... does not of itself create a liberty interest." *Id.* This is because, at this point in the selection

---

7. "Shock incarceration program" means a program pursuant to which eligible inmates are selected directly at reception centers to participate in the program and serve a period of six months in a shock incarceration facility, which

shall provide rigorous physical activity, intensive regimentation and discipline and rehabilitation therapy and programming.
N.Y.Corr.Law § 865(2).

process, the mandatory language ends. The statute does not substantively limit the Commissioner's exercise of discretion in his approval or disapproval of an inmate's application. In fact, "[t]here is not even [a] mild degree of limitation on [the Commissioner's] discretion." *Sher v. Coughlin*, 739 F.2d 77, 81 (2d Cir.1984).

I therefore find, as did the court in *Joihner v. McEvers*, 898 F.2d 569 (7th Cir.1990), a case brought by inmate alleging that he was unconstitutionally denied the right to transfer to a work camp, that " 'the only limit established by these [statutory] guidelines pertains to which inmates are *eligible* ... [but] they do not limit discretion in deciding which of those will actually be assigned.' " *Id.* 898 F.2d at 572 (quoting district court opinion). Not only do the guidelines contain "no mandatory language directing that a certain outcome be reached," *id.*, the Commissioner "remain[s] free to deny ... placement for ... no reason[ ] at all...." *Id.* 898 F.2d at 573. Indeed, although not determinative, the Practice Commentary preceding N.Y.Corr.Law § 865 agrees:

> Selection of eligible participants is completely within the discretion of the Commissioner. No inmate has the right to participate in the program.

*Id.* (McKinney 1993 Supp. at 100). Accordingly, I find that the statute and the regulations promulgated thereunder, *see* 7 N.Y.C.R.R. § 1800.3(c), insofar as they pertain to the application and selection process, do not limit the Commissioner's discretion in approving or disapproving inmate applications, and "thus denial of a request for placement need not be accompanied by procedural safeguards." *Joihner v. McEvers*, 898 F.2d at 573. Furthermore,

> [t]he statute does not mandate that certain prisoners "shall" participate "unless" specific disqualifications are present, but [rather] outlines a discretionary program.... The regulations promulgated under the ... statute simply outline procedures and factors the Committee "should" consider in exercising its discretion; they do not list the exclusive factors to be considered nor do they mandate approval if certain factors are present. Therefore, while they may establish "guidelines ... used to structure the exercise of discretion," they also fail to create any entitlement or legitimate expectation giving rise to a protected liberty interest.

*Dugar v. Coughlin*, 613 F.Supp. 849, 856 (S.D.N.Y.1985) (quoting *Boothe v. Hammock*, 605 F.2d 661, 664 (2d Cir.1979)).[8]

Although N.Y.Corr.Law § 867 does not limit the Commissioner's discretion in deciding which inmates will be allowed to participate in the shock incarceration program, it significantly restricts the ability of inmates to participate in the program, as follows:

> Applicants cannot participate in the shock incarceration program unless they agree to

8. Plaintiff relies heavily on a Third Circuit case, *Winsett v. McGinnes*, 617 F.2d 996 (3rd Cir. 1980), *cert. denied*, 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981), in which the court, when reviewing a Delaware law governing eligibility of inmates to participate in a work release program, held that "a state-created liberty interest in work release arises when a prisoner meets all eligibility requirements under the state regulations and the exercise of the prison authorities' discretion is consistent with work release policy." *Id.* 617 F.2d at 1007. The *Winsett* court found that the defendants' did "not properly exercise their discretion," *id.* 617 F.2d at 1008, because they relied on "impermissible criteria, fear of public outcry and legislative outcry," *id.* 617 F.2d at 1007, when denying the plaintiff the opportunity to participate in the program.

Plaintiff's reliance on *Winsett* is misplaced because, even after meeting all eligibility requirements for participation in the shock incarceration program, an inmate's participation is nevertheless "depend[ent] wholly on the unfettered exercise of discretion by" the Commissioner, *Pugliese v. Nelson*, 617 F.2d 916, 922 (2d Cir. 1980), because the statute is "[a]bsent [of] some ... provision that clearly limits [the Commissioner's] exercise of [his] discretion." *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir.1988), *aff'd sub nom Nietzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). It is understood, of course, that

> [t]here is no such thing as unbridled discretion in American law. No state may penalize protected expression or discriminate because of race. So a rule that at first glance allows a warden to act for any or no reason really means: "The warden may do *A* ... for any reason except *M* [race, speech, and so on]."

*Wallace v. Robinson*, 940 F.2d 243, 247 (7th Cir.1991) (Easterbrook, J.), *cert. denied*, — U.S. —, 112 S.Ct. 1563, 118 L.Ed.2d 210 (1992).

be bound by all the terms and conditions thereof and indicate such agreement by signing the memorandum of the program immediately below a statement reading as follows:

"I accept the foregoing program and agree to be bound by the terms and conditions thereof. I understand that my participation in the program is a privilege that may be revoked at any time at the sole discretion of the commissioner. I understand that I must successfully complete the entire program, and in the event that I do not successfully complete said program for any reason, I will be transferred to a nonshock incarceration correctional facility to continue service of my sentence."

N.Y.Corr.Law § 867(3). The latter clause in quotations is set forth, in boldface type, in the Memo of Agreement the plaintiff signed on January 7, 1991. *See* Steinman Affidavit, Exh. A, and Part III–D–2, *supra.* This provision clearly states that "participation in the program is a privilege that may be revoked at any time at the sole discretion of the Commissioner." N.Y.Corr.Law § 867(3). The statute states further, "Nothing contained in this article may be construed to confer upon any inmate the right to participate or continue to participate therein." N.Y.Corr.Law § 867(5).[9] Accordingly, the statute does not create a "substantive interest to which the individual has a legitimate claim of entitlement," *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983), because it is "subject to so many conditions as to make [the] interest meager, transitory or uncertain." *Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir.1983) (quoted in *Wallace v. Robinson,* 940 F.2d at 246).

After an inmate has begun actively participating in the program, 7 N.Y.C.R.R. 1800.10 provides the mechanism to remove an inmate from the program. It states in pertinent part that:

[a]n inmate's privilege to continue to participate in the shock incarceration program may be revoked at the sole discretion of the commissioner, the deputy commissioner for facility operations, or the director of shock incarceration upon recommendation of the shock incarceration correctional facility's superintendent's committee.

*Id.* at § 1800.10(a).

Once again, the Commissioner is given unlimited discretion to remove an inmate from the program. The plaintiff argues that he should have been afforded a hearing before he was removed, or at least, that he should have been provided with some notice of the reasons for his removal. A hearing, however, is only required when the director of shock incarceration seeks an inmate's removal. Both the Commissioner and the Deputy Commissioner for facility operations may exercise their discretion, without restraint, to remove an inmate from participation in the program. The plaintiff understood this when he signed the Memo of Agreement. The Commissioner's decision to remove an inmate from the shock incarceration program and transfer him to another correctional facility is clearly within the Commissioner's power of transfer, a power that is well established within this circuit.[10]

Consequently, the plaintiff's argument that "[t]he presence of discretion on the part of

---

9. When reviewing the statute governing New York's Temporary Release Program, which contained identically-worded provisions to N.Y.Corr.Law §§ 867(3) & (5), the court in *Dugar v. Coughlin,* 613 F.Supp. 849 (S.D.N.Y.1985), rejected the plaintiff's claim that he had a protected liberty interest in participating in the program. *See id.* 613 F.Supp. at 855 ("It is also well-settled that the mere fact that a state has a conditional release program does not, in and of itself, create a protected liberty interest in the form of a legitimate expectation or entitlement of participation therein which implicates due process rights").

10. *See, e.g., Meriwether v. Coughlin,* 879 F.2d 1037, 1047 (2d Cir.1989) ("It is well established

that the transfer of a prisoner from one institution to another does not invoke the protection of the Due Process Clause"); *Matiyn v. Henderson,* 841 F.2d 31, 34 (2d Cir.1988) ("As a general rule there is no constitutionally based liberty interest that entitles a prisoner to a hearing or any other safeguards before being transferred from one prison to another, absent a state law or regulation conditioning such transfer on proof of misbehavior or other specified events"), *cert. denied,* 487 U.S. 1220, 108 S.Ct. 2876, 101 L.Ed.2d 911 (1988); *Pugliese v. Nelson,* 617 F.2d at 922 ("where prison authorities have unfettered discretion to transfer prisoners from one institution to another, a prisoner's interest in avoiding transfer to an institution affording less favorable

prison authorities in the Shock Incarceration Program does not negate the possibility that a state-created entitlement to participation in the Shock Incarceration Program may exist," Plaintiff's Memorandum of Law, at 7, and his argument that "it is by no means clear that the Commissioner may, for any reason whatsoever remove an inmate from participation in the program," *id.* at 8, are without merit. Plaintiff has failed to provide legal support for these arguments. From the facts before the court, it is readily apparent that the plaintiff was removed from the shock incarceration program on the basis of information concerning the plaintiff that was unknown to the committee at the time he applied to participate in the program.[11] Although N.Y.Corr.Law § 867(2) and 7 N.Y.C.R.R. § 1800.10 do not explicitly permit the Com-

missioner to so review an inmate's suitability once the inmate has been accepted into the program, this facet of the Commissioner's discretion is easily derived from both provisions. This follows because "the cited rules do not delineate substantive predicates so that it can be said that a particular result is mandated under the rules. Nor do the rules unambiguously limit the instances in which discretion may be exercised; ..." *Purnell v. Lord,* 952 F.2d at 685. Similar to the regulations governing the application and selection process, which do not contain ."even [a] mild degree of limitation on discretion," *Sher v. Coughlin,* 739 F.2d at 81, the regulation governing removal from the program does not limit the Commissioner's discretion.

With respect to the certificate of earned eligibility, the plaintiff states that a "promise

---

conditions is insufficient to qualify for due process protections").

The Supreme Court, in *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), held that New York's law authorizing the transfer of prisoners between correctional facilities did not violate the Constitution, because prisoners have no inherent right to remain at a particular correctional facility, regardless of the nature of the conditions of confinement at a particular institution. *See id.* 427 U.S. at 243, 96 S.Ct. at 2547 (the inmate "had no right to remain at any particular prison facility and no justifiable expectation that he would not be transferred unless found guilty of misconduct"). *See also Olim v. Wakinekona,* 461 U.S. at 249–50, 103 S.Ct. at 1747–48 (the Court held that because "Hawaii's prison regulations place[d] no substantive limitations on official discretion and thus create[d] no liberty interest entitled to protection under the Due Process Clause ... because the prison Administrator's discretion to transfer an inmate is completely unfettered ... [and because] [n]o standards govern[ed] or restrict[ed] the Administrator's determination"); *Hewitt v. Helms,* 459 U.S. at 468, 103 S.Ct. at 869 ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); *Meachum v. Fano,* 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976) (an inmate's "conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons") (emphasis in original) and *id.* 427 U.S. at 228, 96 S.Ct. at 2540 ("Whatever expectation the prisoner may have in remaining at a particular institution so long as he behaves himself, it is too ephemeral and insubstantial to trigger proce-

dural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all"); *Williams v. Faulkner,* 837 F.2d at 309 ("Absent some statutory or regulatory provision that clearly limits prison officials in the exercise of their discretion, a prisoner may be transferred for any reason, or no reason at all").

11. Indeed, the plaintiff acknowledges that "there are some instances where an inmate would be removed from the Shock Incarceration Program without due process," including where "the inmate is statutorily ineligible and had been mistakenly placed in the program." Plaintiff's Memorandum, at 16–17. This is confirmed in the affidavit of Cheryl Clark, the Director of the Shock Development Program:

> I am familiar with a number of individuals who have been removed from the Shock Program for reasons other than disciplinary problems after initially having been determined to be eligible to participate in the program.... In all of these cases, information which was not known at the time the individual was initially evaluated for placement in the Shock Program and later came to our attention, was the basis for removing the inmate from the program.

*Id.* Clark Affidavit, ¶¶ 2–3. I therefore agree with the defendants' statement that "[a]lthough the plaintiff alleges, in purely conclusory terms, that no other participant in the shock program was removed without a disciplinary hearing ... this assertion was conclusively refuted by the Director of the Shock Development program (see Affidavit of Cheryl Clark)." Defendants' Reply Memorandum of Law, at 8. Further, plaintiff has provided absolutely no support for his contention that other inmates were provided with

[is made] to each inmate[ ] to receive an earned eligibility certificate upon successful completion of the Shock Incarceration Program, (pursuant to Correction Law § 805), ..." Plaintiff's Memorandum of Law, at 18. The plaintiff also quotes N.Y.Corr.Law § 867(4), *id.* at 19, which provides that

> An inmate who has successfully completed a shock incarceration program *shall* be eligible to receive a certificate of earned eligibility pursuant to section eight hundred five of this chapter.

(emphasis supplied by plaintiff).[12] Notwithstanding this language, the Practice Commentary following N.Y.Corr.Law § 805 states that:

> Successful completion only authorizes the issuance of a certificate and does not mandate it. The issuance of a certificate is discretionary. "Successful participation in the program is merely a threshold requirement which activates the Commissioner's discretionary power to issue a CEE (see Correction Law section 805)." Even after an inmate has successfully completed the program, the Commissioner may deny a certificate.

*Id.* (McKinney 1993 Supp. at 97) (quoting *Frett v. Coughlin*, 156 A.D.2d 779, 781, 550 N.Y.S.2d 61, 63 (3rd Dept.1989)). Indeed N.Y.Corr.Law § 805 states that "[i]f the commissioner determines that the inmate has successfully participated in the [earned eligibility] program he *may* issue the inmate a certificate of earned eligibility." (emphasis supplied). The statute thereafter appears on its face to use mandatory language, guaranteeing inmates who meet certain criteria that they will be released early on parole. That language is as follows:

> Notwithstanding any other provision of law, an inmate who is serving a sentence with a minimum term of not more than six years and who has been issued a certificate of earned eligibility, shall be granted parole release at the expiration of his mini-

mum term or as authorized by subdivision four of section eight hundred sixty-seven ...

*Id.* This clause, however, is immediately followed by the following limitation:

> *unless* the board of parole determines that there is a reasonable probability that, if such inmate is released, he will not live and remain at liberty without violating the law and that his release is not compatible with the welfare of society.

*Id.* Thus, while appearing to use mandatory language which gives "specific directives to the decisionmaker that if the regulations' substantive predicates are present, [that] a particular outcome must follow," *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. at 463, 109 S.Ct. at 1910, these criteria are essentially "so open-ended that [they] leave[ ] the officials with essentially limitless discretion to ... [deny] the inmate [early release on parole] as they please." *Smith v. Shettle*, 946 F.2d at 1252.

■■■■ In any event, a provision which may give an inmate accepted for shock incarceration a liberty interest in early parole upon successful completion does not give an entitlement to initial acceptance in the shock incarceration program, or in continued maintenance in the program of one accepted but later determined to be ineligible in the Commission's discretion. Plaintiff's argument that he has been denied a certificate of earned eligibility, due to his removal from the shock incarceration program prior to its completion, may thus be deemed an expectancy interest in early release on parole, rather than a promise of early release. It is well established that such an interest is not protected by the Due Process Clause.[13] As the Supreme Court stated in *Greenholtz, supra*, when reviewing Nebraska's parole-granting procedures, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expi-

---

due process prior to being removed from the program.

**12.** 7 N.Y.C.R.C. § 1800.2 contains a similar provision:

> If an inmate successfully completes the shock incarceration program, he or she will be eligi-

ble for parole release and will be awarded a certificate of earned eligibility pursuant to Correction Law, section[ ] 805.

**13.** The plaintiff is cognizant of this tenant of the law. *See* Plaintiff's Memorandum of Law, at 5 ("there is no constitutionally mandated right to enter a discretionary parole release program").

ration of a valid sentence," *id.* 442 U.S. at 7, 99 S.Ct. at 2104, because "[t]here is a crucial distinction between being deprived of a liberty one has, as in parole, and being denied a conditional liberty that one desires." *Id.* 442 U.S. at 9, 99 S.Ct. at 2105. "That the state holds out the *possibility* of parole provides no more than a mere hope that the benefit will be obtained." *Id.* 442 U.S. at 11, 99 S.Ct. at 2105 (emphasis in original). Accordingly, "[a] prisoner is not entitled to the protections of due process merely because a state provides for the possibility of parole." *Washington v. White,* 805 F.Supp. 191, 192 (S.D.N.Y.1992). Only those already released on parole are considered to have a protectible liberty interest in not having their parole revoked. *Williams v. Ward,* 556 F.2d 1143, 1155 (2d Cir.1977), *cert. dismissed,* 434 U.S. 944, 98 S.Ct. 469, 54 L.Ed.2d 323 (1977) ("parole is an interest within the scope of the 'liberty' protected by the due process clause ... in regard to prisoners *already released* on parole and facing possible revocation") (emphasis in original).

The scheme regulating the shock incarceration program simply does not give the plaintiff "a right to claim parole release," *Pugliese v. Nelson,* 617 F.2d at 923, by virtue of receipt of a certificate of earned eligibility upon successful completion of the shock incarceration program, because that certificate is issued pursuant to the discretion of the Commissioner. Nor do the regulations set forth criteria, which if present, would "lead to specific consequences [and therefore] it has not created liberty or property" in a certificate of earned eligibility. *DeTomaso v. McGinnis,* 970 F.2d 211, 212 (7th Cir.1992); *Wallace v. Robinson,* 940 F.2d at 244 ("Liberty and property interests depend on substantive rules governing entitlements"). Further, the regulations do not contain the "requisite relevant mandatory language ... [and] [t]hey stop short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met." *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. at 464, 109 S.Ct. at 1910.

Accordingly, it is my Report and Recommendation that defendants' motion for summary judgment be granted and plaintiff's motion for summary judgment be denied. The complaint should be dismissed as to all defendants. Further, because I find that plaintiff had no constitutionally-protected liberty interest in remaining in the Shock Incarceration program at Monterey, or in receiving a certificate of earned eligibility, it is unnecessary to consider the issue of qualified immunity raised by the defendants. *Siegert v. Gilley,* 500 U.S. 226, ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all.")

### III. *Conclusion*

Plaintiff's request for appointment of counsel, his three motions to compel, and defendants' motion for a protective order are denied. It is my report and recommendation that plaintiff's motion for injunctive relief be denied as moot, and that his motions to supplement the complaint and for summary judgment also be denied. It is also my recommendation that defendants' motion for summary judgment be granted and the complaint be dismissed as against all defendants.

The parties should be on notice that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Local Rule 30(a)(3), any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt thereof. Failure to file objections within the specified time waives the right to appeal a District Court Order adopting this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a) and 6(e); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions

of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.

/s/ Kenneth R. Fisher
KENNETH R. FISHER
UNITED STATES MAGISTRATE JUDGE

Dated: Rochester, New York May 10, 1993.