Donald D. DAVIS, Barbara A. Davis, Steven D. Myhand, Plaintiffs,

v.

Parole Officer Anthony COTOV # 1316, Parole Officer Mrs. Clemente, Police Officer Bill Walsh of Suffolk County, Police Officer Steven Bardak # 5021 of Suffolk County, Police Officer Christopher Craven, the Suffolk County Police Department, Command 310, Defendants.

01 CV 3993(ADS)(ARL).

United States District Court, E.D. New York.

Aug. 14, 2002.

**312**

Donald Davis, Romulus, NY, Pro Se.

Barbara A. Davis, Steven Myhand, Huntington Station, NY, Pro Se.

Eliot Spitzer, Attorney General of the State of New York, By: Toni E. Logue, Assistant Attorney General, Mineola, NY, Attorney for Defendants Parole Officer Anthony Cotov and Parole Officer Mrs. Clemente.

Robert J. Cimino, Suffolk County Attorney, By: Donnamarie Kopping, Assistant County Attorney, Hauppauge, NY, Attorney for Defendants Police Officer Bill Walsh, Police Officer Steven Bardak, Police Officer Christopher Craven, and the Suffolk County Police Department, Command 310.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

In this action, brought pursuant to 42 U.S.C. § 1983 ("Section 1983"), the complaint alleges false arrest, excessive force, and the deprivation of due process by two parole officers, several police officers, and the County of Suffolk. Presently before the Court are (1) a motion by the parole officers to dismiss the complaint as against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ. P."); (2) a motion by Donald Davis ("Davis" or a "plaintiff") Davis for a default judgment against the defendants; and (3) a motion by Davis for the appointment of counsel.

### I. BACKGROUND

The following facts are taken from the complaint and are accepted as true for the purpose of deciding the motions presently before the Court. In or about April 2000, one Angela Decarmine ("Decarmine"), Davis' stepdaughter, stabbed him in the chest with a six-inch knife because Davis would not allow Decarmine to invite her friends into his house at 4:00 a.m. Davis, who is paraplegic and confined to a wheelchair, suffered a chest wound that required twenty stitches and the insertion of a chest tube. The complaint indicates that following this incident, Davis obtained an order of protection against Decarmine.

Approximately one month later, on May 5, 2000, at 12:00 p.m., at 556 Wilson Boulevard in Central Islip, New York, Decarmine attempted to cut Davis with two knives. Barbara Davis ("Barbara Davis" or a "plaintiff"), Davis' wife, took the knives away from Decarmine, and Davis called "911". Police Officers Bill Walsh ("Walsh" or a "defendant") and Steven Bardak ("Bardak" or a "defendant") responded to the 911 call. When the officers arrived at the scene, Davis asked them to arrest Decarmine for attempted assault and violating an order of protection.

Walsh and Bardak then spoke to Decarmine. She told the officers that Davis was the brother of one Larry Davis, an individual who had killed a police officer. Walsh

and Bardak arrested Davis, transported him to the precinct, and charged him with second-degree menacing. Davis told Bardak that he was "going to sue him for false arrest." Bardak picked Davis up and slammed him onto a table. Bardak caused the plaintiff to suffer injuries to his back. He was treated at Huntington Hospital and released to police custody that night.

At an unspecified point during the evening, Davis told Police Officer Christopher Craven ("Craven" or a "defendant") that Bardak was prejudiced. Upon hearing this statement, Craven jumped up, opened Davis' cell, dragged Davis on the floor, and kicked Davis while he was lying on the ground. The following morning, Davis was arraigned and released on his own recognizance.

Barbara Davis picked Davis up at the courthouse and told him that he could not go back to the house in Central Islip because police officers were waiting there. The officers had told Barbara Davis that if they saw Davis at the house again, they would arrest him. Thus, on May 6, 2000, Davis "went back to the Bronx."

On May 7, 2000, Barbara Davis visited Davis in the Bronx and told him that Bardak repeatedly drove by her house in Central Islip and harassed her sons. She called the third precinct and complained about Bardak's behavior.

On May 8, 2000, Bardak and Walsh called the defendants' parole officers Anthony Cotov ("Cotov" or a "defendant") and Mrs. Clemente ("Clemente" or a "defendant") (collectively, "parole officers"), whose first name does not appear in the complaint. Bardak and Walsh told Cotov and Clemente that Davis had been arrested and that while he was being booked, he threatened a police officer.

On or about May 8, 2000, Cotov and Clemente issued a warrant for Davis' arrest based on a parole violation. Cotov and Clemente spoke with Barbara Davis on the telephone and asked her questions about the incident with Decarmine that had led to Davis' arrest. Barbara Davis told Cotov and Clemente that Davis had been with her on the day in question. Cotov demanded that Barbara Davis produce photographs that depict Davis trying to stand up in an attempt to demonstrate that Davis could ride a bicycle.

On May 9, 2000, at 5:30 a.m., Cotov, Clemente and an unidentified officer arrived at Davis' house in the Bronx while Davis, Barbara Davis, and Davis' three grandchildren were sleeping. Davis climbed into his wheelchair and moved toward the front door. When Davis reached the front door, Clemente and Cotov pushed it open, knocking Davis out of his wheelchair. Clemente told Davis that he was going to jail, and Cotov told him, "You like [to] threaten officers? I got a witness this time." Clemente and Cotov dragged Davis to the car. When Davis asked the parole officers to bring his wheelchair, the officers told him that he did not need the wheelchair because they had seen him riding a bicycle the previous day.

Although Davis' allegations are vague, he appears to contend that he received two notices of a parole violation that were void. The first notice was void because the plaintiff did not receive it until after the hearing and because it contained the incorrect time, date, and location of the violation hearing. In addition, the location in which the first hearing was to have been held was not accessible to wheelchairs, and the plaintiff has required the use of a wheelchair for the past 15 years.

The second notice was void because it did not contain a time, and the location mentioned was incorrect. As such, the plaintiff contends that he was deprived of the right to present a defense and was

unable to inform his seven witnesses when to appear. Davis alleges that Cotov intentionally provided him with incorrect information about the parole violation hearing so that Davis would be unable to prepare an adequate defense.

Barbara Davis did not appear at the parole violation hearing to testify on Davis' behalf. After she did not appear, Cotov required Davis to sign a "special condition" directing him to stay away from Barbara Davis.

Davis alleges that Cotov telephoned the "hospital within side of North Infirmary Command of the Correctional Facility" and informed the medical director that Davis did not require a wheelchair. According to Davis, Cotov told the medical director that he had seen Davis riding a bicycle.

The complaint further alleges that defendant Bardak falsely arrested Steven Myhand ("Myhand" or a "plaintiff"), Davis' son. Bardak beat Myhand in the back of the car and then told Myhand that, "[I]f I can't get your nigger father, I'll get the next best thing and ... every time [I] see [you][I] will arrest [you]." Myhand is now afraid to go outside or to school.

## II. *DISCUSSION*

### A. *Pro Se* Standard

At the outset, the Court is mindful that the plaintiffs' *pro se* status means that their submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers.' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)); *Fleming v. United States*, 146 F.3d 88, 90 (2d Cir.1998) (citations omitted). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit

rights by virtue of her lack of legal training. *See Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir.1983). Indeed, courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Traguth*, 710 F.2d at 95 (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir.1981)).

The complaint consists of a completed "Form To Be Used By Prisoners in Filing a Complaint Under the Civil Rights Act, 42 U.S.C. § 1983" with attached handwritten pages entitled, "Statement of Facts," and "Relief Requested." Therefore, although the complaint does not specify claims, causes of action, or statutes allegedly violated, the Court construes the complaint as raising claims that the defendants violated 42 U.S.C. § 1983. Further, a liberal reading of the complaint suggests that Davis, Barbara Davis, and Myhand are claiming that (1) Walsh and Bardak falsely arrested Davis; (2) Bardak used excessive force against Davis during his arrest of the plaintiff; (3) Craven used excessive force when he beat Davis in a jail cell the night before Davis was arraigned; (4) Cotov and Clemente improperly arrested Davis for a parole violation; (5) Cotov and Clemente deprived Davis of his right to procedural due process in connection with the parole revocation proceedings; and (6) a Bardak falsely arrested Myhand.

### B. The Motion by the Parole Officers to Dismiss the Complaint

#### 1. The Claims by Davis

Defendants Cotov and Clemente move to dismiss Davis' Section 1983 claims

against them pursuant to Rule 12(b)(6) of the Fed.R.Civ.P. on the ground that the claims against them are barred by *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *See King v. Simpson,* 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). As noted above, the Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau,* 180 F.3d 42, 54 (2d Cir.1999). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.,* 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997). The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995). Indeed, it is not the Court's function to weigh the evidence that might be presented at trial; instead, the Court must merely determine whether the complaint itself is legally sufficient. *See Villager Pond,* at 378.

Initially, the Court notes that the complaint does not allege that Davis was found guilty of a parole violation. However, when considering a motion to dismiss the complaint, the district court may consider the allegations in the complaint and "all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken." *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995). Federal Rule of Evidence 201(b) provides, in pertinent part, that "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."

█ Cotov and Clemente attached to their motion papers a copy of the Administrative Appeal Decision Notice from the State of New York, Executive Department, Board of Parole. The Notice states that Davis pled guilty to the parole violation, parole was revoked, and Davis' argument on appeal was without merit.

The Court is of the opinion that it is proper to take judicial notice of the fact that Davis pled guilty to a parole violation because that fact is not subject to reasonable dispute and is "capable of accurate and ready determination" by examining the Appeal Decision Notice, a "source whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). It is also permissible for the Court to take judicial notice of the Appeal Decision Notice as a public document, *see Rothman v. Gregor,* 220 F.3d 81, 89 (2d Cir.2000), and as a document that establishes that Davis was found guilty of violating parole by reason of the fact that he appealed the decision revoking his parole, *see Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.,* 969 F.2d 1384, 1388 (2d Cir.1992) (holding that a court may consider actions and filings in related proceedings " 'to establish the fact of such litigation and related filings' " (quoting *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 774 (2d Cir.1991))). Thus, the Court takes judicial notice of the fact

that Davis was found guilty of violating parole.

■ The Court now turns to the parole officers' assertion that Davis' Section 1983 claims are barred by *Heck.* In *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court held:

[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed or direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* Thus, a claim for monetary damages under Section 1983 is not cognizable when "establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction." *Id.* at 481–82, 114 S.Ct. 2364. In making this ruling, the Supreme Court did not "engraft an exhaustion requirement upon § 1983, but rather den[ied] the existence of a cause of action." *Id.* at 489, 114 S.Ct. 2364.

■ Notably, *Heck* does not bar a Section 1983 suit when the plaintiff's sentence has expired, *Spencer v. Kemna,* 523 U.S. 1, 20–21, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), because it would be impossible, as a matter of law, for a plaintiff no longer in custody to satisfy the favorable termination requirement in that he could not file a habeas petition. *Id.* In addition, where the plaintiff's conviction involves a fine rather than imprisonment, a Section 1983 suit is permissible because given that the plaintiff "is not and never was in the custody of the State, he ... has no remedy in habeas corpus." *Leather v. Eyck,* 180

F.3d 420, 424 (2d Cir.1999). Further, where the plaintiff's claims challenge the conditions of confinement rather than its fact or duration, *Heck* is not a bar to a Section 1983 lawsuit. *See Jenkins v. Haubert,* 179 F.3d 19, 27 (2d Cir.1999).

■ Federal courts have held that *Heck* applies to Section 1983 actions that challenge the fact or duration of confinement based on the revocation of parole. *See White v. Gittens,* 121 F.3d 803 (1st Cir. 1997); *Schafer v. Moore,* 46 F.3d 43 (8th Cir.1995); *Crow v. Penry,* 102 F.3d 1086, 1087 (10th Cir.1996); *McGrew v. Texas Board of Pardons & Paroles,* 47 F.3d 158, 161 (5th Cir.1995); *Hill v. Goord,* 63 F.Supp.2d 254, 261–62 (E.D.N.Y.1999); *Sealey v. Fishkin,* 1998 WL 1021470 *5 (E.D.N.Y. Dec.2, 1998). Here, Davis' allegations against Cotov and Clemente plainly challenge the validity of the parole revocation procedures. The complaint asserts that Davis' arrest for the parole violation was based on inadequate investigation and the improper questioning of Barbara Davis. Davis further alleges that the arrest itself was improper in that Cotov and Clemente came to his house in the early morning hours, woke his wife and grandchildren, knocked over his wheelchair when they entered the residence, dragged him to the car, and refused to bring his wheelchair with them. Davis also challenges the propriety of the revocation proceedings themselves, claiming that he did not receive sufficient notice of the proceedings and was not given an adequate opportunity to prepare his defense.

However, Davis does not allege that he has succeeded in establishing the invalidity of his parole revocation in an appropriate state or federal proceeding. Moreover, Davis remains incarcerated, *cf. Spencer,* 523 U.S. at 20–21, 118 S.Ct. 978, *Leather,* 180 F.3d at 424, and his present lawsuit

does not challenge the conditions of his confinement *cf. Jenkins,* 179 F.3d at 27. Accordingly, his claims against Cotov and Clemente are barred by *Heck* because they challenge the validity of the parole revocation procedures, which he has failed to prove have been reversed, expunged, or declared invalid. *Heck,* 512 U.S. 477, 486–87, 114 S.Ct. 2364. For this reason, the Court finds that the complaint fails to state a cognizable Section 1983 claim against Cotov and Clemente, and their motion to dismiss Davis' Section 1983 claims against them pursuant to Fed.R.Civ.P. 12(b)(6) is granted.

### 2. The Claims by Barbara Davis and Myhand

■■■ Cotov and Clemente move to dismiss the claims Barbara Davis and Myhand have asserted against them pursuant to Rule 12(b)(6). Reading the complaint liberally, the Court finds that Barbara Davis alleges that Cotov and Clemente improperly sought evidence from her concerning her husband and advised her not to communicate with her husband while he was in jail. Section 1983 provides, in relevant part, "[e]very person who, under color of [state law] subjects, or causes to be subjected any ... person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or a] suit [in] equity." A violation is proven when "a person acting under color of state law deprived a plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *McDarby v. Dinkins,* 907 F.2d 1334, 1336 (2d Cir.1990) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)). Thus, a Section 1983 claim has two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's ac-

tions, the plaintiff suffered a deprivation of his rights or privileges secured by the Constitution and laws. *See Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998); *Eagleston v. Guido,* 41 F.3d 865, 872 (2d Cir.1994).

■■■ Here, Barbara Davis' allegations that Cotov and Clemente asked her questions about Davis, demanded that she produce photographs of him on a bicycle, and told her to "stay away" from her husband, do not amount to a violation of the constitution or any law. First, Barbara Davis does not allege that the questions asked by Cotov and Clemente violated her Fifth or Sixth Amendment rights. Second, Barbara Davis does not claim that the conduct of Cotov and Clemente constituted an illegal search and seizure in violation of her Fourth Amendment rights. Indeed, although she alleges that Cotov demanded that she produce photographs of him on a bicycle, she does not state that she even gave him the photographs, much less that he searched her home, car, or person without a warrant or probable cause. Third, Barbara Davis does not mention a section of the Constitution or a law that Cotov violated by telling her not to communicate with her husband. In addition, the Court finds that Barbara Davis' allegation that Cotov "threatened" her by telling her that he had the power to bar her from seeing her husband in jail does not violate the Constitution or any laws. "Standing alone, § 1983 provides no protection for civil rights." *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 618, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). Thus, the Court finds that Barbara Davis' Section 1983 claim fails to satisfy the second element of a Section 1983 claim. Accordingly, the motion by Cotov and Clemente to dismiss her claims against them is granted pursuant to

Fed.R.Civ.P. 12(b)(6), and those claims are dismissed.

The Court finds that the only allegations Myhand makes in the complaint pertain to his arrest by Bardak. Accordingly, to the extent that the complaint contains claims by Myhand against Cotov and Clemente, those claims are also dismissed.

## C. The Motion by Davis for a Default Judgment

■ In papers dated March 20, 2002, Davis requests that a default judgment be entered against the defendants on the ground that they did not file a narrative statement by February 15, 2002, as was required by the January 15, 2002 order of United States Magistrate Judge Arlene Rosario Lindsay. The Court denies Davis' motion.

First, the defendants asked for an extension of time to provide their narrative statements, and that request was granted. Thereafter, the defendants filed their narrative statements which the Court accepted as timely filed. Further, even if the defendants had not filed their narrative statements, the plaintiff would not be entitled to a default judgment. Rule 55 provides for the entry of a default judgment in cases in which a party does not appear or otherwise defendant an action. Clemente and Cotov appeared in and defended the action by filing a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Defendants Walsh, Bardak, Craven, and the Suffolk County Police Department Command 310 appeared in and defended the action by filing an answer. In addition, the Court has reviewed the docket sheet and finds no indication that the defendants have failed to comply with Judge Lindsay's discovery orders. Accordingly, Davis' motion for the entry of a default judgment is denied.

## D. The Motion by Davis for the Appointment of Counsel

■ In papers dated June 28, 2002, Davis moves for the appointment of counsel. The Criminal Justice Act provides: "Whenever the United States magistrate or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28." 18 U.S.C. § 3006A(a)(2)(B). The Second Circuit has articulated several factors for determining whether to appoint counsel to an indigent civil litigant pursuant to 28 U.S.C. § 1915(e). Those factors include: the litigant's likelihood of success on the merits; the complexity of the legal issues raised by the complaint; and the litigant's ability to investigate and present the case. *See Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir.1986); *see also Wenger v. Canastota Cent. Sch. Dist.*, 146 F.3d 123, 125 (2d Cir.1998).

The Court has reviewed the complaint in this case and concludes that the Davis has not met the threshold requirement for the appointment of counsel set forth in *Hodge* and reiterated in *Wenger*. Accordingly, Davis' motion for the appointment of counsel is denied, with leave to renew at the conclusion of discovery.

## III. *CONCLUSION*

Based on the foregoing, it is hereby

**ORDERED,** that the motion by Clemente and Cotov to dismiss the complaint against them pursuant to Rule 12(b)(6) is **GRANTED,** and those claims are **DISMISSED;** and it is further

**ORDERED,** that the Clerk of the Court is directed to amend the caption of the complaint to read as follows:

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

DONALD D. DAVIS, BARBARA A. DAVIS, STEVEN D. MYHAND Plaintiffs,

-against-

POLICE OFFICER BILL WALSH OF SUFFOLK COUNTY, POLICE OFFICER STEVEN BARDAK # 5021 OF SUFFOLK COUNTY, POLICE OFFICER CHRISTOPHER CRAVEN, THE SUFFOLK COUNTY POLICE DEPARTMENT, COMMAND 310, Defendants.

and it is further

**ORDERED,** that the motion by Davis for the entry of a default judgment is **DENIED;** and it is further

**ORDERED,** that the motion by Davis for the appointment of counsel is **DENIED;** and it is further

**ORDERED,** that the parties are directed to appear for a status conference on September 18, 2002, at 9:00 a.m., and that Barbara Davis, Myhand, and counsel for Walsh, Bardak, Craven and the Suffolk County Police Department are directed to appear in person for the status conference, and the Court will contact Davis by telephone from the courtroom.

**SO ORDERED.**