James Edward WEBSTER, Plaintiff,

v.

M. HIMMELBACH, S. Mattingly, Tina Stanford, Anthony J. Annucci, Mr. Semrau, and Julie Curtis, Defendants.

1:17–CV–00247 EAW

United States District Court,
W.D. New York.

Signed September 27, 2017

James Edward Webster, Buffalo, NY, pro se.

Hillel David Deutsch, NYS Attorney General's Office Department of Law, Rochester, NY, for Defendants.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, United States District Judge

### INTRODUCTION

Plaintiff James Edward Webster ("Plaintiff"), proceeding *pro se*, files this action seeking relief under 42 U.S.C. § 1983. (Dkt. 7). Specifically, Plaintiff alleges that he was denied due process when he was designated as a "discretionary sex offender" ("DSO")[1] after being released to

---

1. "According to the New York State Parole Handbook, '[a] discretionary sex offender is generally a person who has a history of sexual offense or pattern of inappropriate sexual behavior, but is not subject to the Sex Offender Registry for any number of reasons. [A parol-ee] determined to be a discretionary sex offender ... will be supervised by the Division of Parole on an intensive basis.'" *Singleton v. Doe*, 210 F.Supp.3d 359, 375 (E.D.N.Y. 2016) (quoting N.Y. State Parole Handbook, http://

the custody of the New York State Division of Parole ("Parole") in Buffalo, New York. (*Id.* at 6). Plaintiff also alleges that he was denied his Fifth Amendment protections against double jeopardy when his parole was subsequently revoked and he was reincarcerated. (*Id.*). Plaintiff further alleges that his First and Fourteenth Amendment rights were violated after he was released back into Parole's custody because he continued to be subject to the same DSO status, and his supervised release was subsequently revoked for his possession of a smartphone. (*Id.* at 7–8). Plaintiff seeks damages and requests injunctive relief "to prevent [the] illegal supervision." (*Id.* at 7–8).

Presently before the Court is Defendants' motion to dismiss the amended complaint (Dkt. 12), and Plaintiff's motion to file an amended complaint (Dkt. 24). For the following reasons, Defendants' motion to dismiss is granted, Plaintiff's first cause of action is dismissed with prejudice and Plaintiff's second cause of action is dismissed without prejudice. In addition, Plaintiff's motion to file an amended complaint is denied without prejudice.

## FACTUAL BACKGROUND [2]

On March 28, 2012, Plaintiff was placed on supervised release with Parole after serving 17 years of an indeterminate sentence of 12 ½ to 25 years of incarceration for his June 28, 1996, convictions of Manslaughter in the First Degree and Criminal Possession of a Weapon in the Third Degree. (Dkt. 7 at 6). When Plaintiff reported to Parole's Buffalo Office, Parole Officer ("PO") G. Ralph informed Plaintiff that he would "be supervised as a discretionary sex offender per S.O.R.A. statute and as a compas level 2." (*Id.*). Upon learning of his status as a DSO, Plaintiff told PO Ralph, PO S. Mattingly, and PO Semrau that because he had never been afforded a hearing to dispute his status as a DSO, his due process rights had been violated. (*Id.*).

As a result of this designation, Plaintiff was required to seek "sex offender treatment" with "Julie Curtus." [3] (*Id.*). However, Plaintiff's "parole was violated because Ms. Curtis terminated [Plaintiff] from the program because [he] said that [he] did not feel that [he] was a threat to anyone." (*Id.*). Plaintiff "was violated" due to special conditions that had been "put in place by [P]arole for a 1989 guilty plea which was satisfied completely in 1992...." (*Id.*). Plaintiff alleges that his subsequent incarceration arising from this violation constitutes "double jeopardy" because his 1989 sentence had already been completed. (*Id.*).

On March 3, 2014, Plaintiff was placed back on supervised release with Parole,[4] this time under the supervision of PO Himmelbach. (*Id.* at 7). PO Himmelbach continued to impose the DSO designation despite Plaintiff's advisement that he "did not receive Due process when first released or [on his] recent release." (*Id.*). On

---

www.parole.ny.gov/intro_handbook.html#h3_13 at § 3(13)).

**2.** Unless otherwise indicated, the following facts are taken from Plaintiff's amended complaint.

**3.** The spelling of this name appears to be a typographical error, and the Court interprets the amended complaint to refer to defendant Julie Curtis.

**4.** The Court notes a discrepancy in Plaintiff's allegations. Under Plaintiff's first cause of action, Plaintiff alleges that sometime after March 28, 2012, he was "violated for 24 months," but then, under his second cause of action, Plaintiff alleges that he was released on March 3, 2014, "after his 12 month violation." (Dkt. 7 at 6–7).

August 21, 2014, Plaintiff was found "in pocession [sic] of a smartphone" in violation of his parole conditions. (*Id.*). Plaintiff "was violated for 24 months." (*Id.*).

Plaintiff alleges that he has exhausted his administrative remedies by filing a direct appeal regarding both parole violations. (*Id.*). The substance of Plaintiff's appeal is unclear, but Plaintiff alleges that his appeal was denied on April 23, 2015, and that his "supplemental Pro–Se brief" was also denied on April 28, 2015. (*Id.*).

### PROCEDURAL HISTORY

On August 15, 2016,[5] Plaintiff filed his initial complaint seeking relief pursuant to 42 U.S.C. § 1983. (Dkt. 1). Plaintiff also moved for an order appointing counsel (Dkt. 2), but United States Senior District Judge David G. Larimer denied Plaintiff's motion (Dkt. 4), as well as Plaintiff's subsequent motion for reconsideration. (Dkt. 5; Dkt. 6). On September 1, 2016, Judge Larimer granted Plaintiff leave to file an amended complaint. (Dkt. 4). On December 5, 2016, Plaintiff filed his amended complaint (Dkt. 7), which stated substantially similar allegations as those set forth in his initial complaint.

On January 24, 2017, Defendants filed the pending motion to dismiss. (Dkt. 12). Defendants argue that Plaintiff's claims are barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), as well as the applicable statute of limitations, and that Plaintiff's claims fail to state a cognizable cause of action under the Fourteenth Amendment's Due Process Clause and, in any event, Defendants are insulated from Plaintiff's allegations by the doctrine of qualified immunity. (Dkt. 12–1).

On February 6, 2017, Plaintiff, again, moved for reconsideration of the denial of his motion to appoint counsel, and moved to transfer the case to Buffalo. (Dkt. 15). On March 20, 2017, Judge Larimer denied Plaintiff's second motion for reconsideration, and granted Plaintiff's motion to transfer the case "to Buffalo." (Dkt. 17).

On March 21, 2017, the case was transferred to the undersigned.[6] On June 1, 2017, Plaintiff filed a motion for an extension of time to file a Response/Reply, and for reconsideration of his motion to appoint counsel. (Dkt. 21). Plaintiff was granted an extension of time to file a memorandum of law in opposition to Defendants' motion to dismiss, but his third motion for reconsideration was denied. (Dkt. 23).

On July 31, 2017, Plaintiff filed his responsive papers in opposition to Defendants' motion to dismiss, as well as a cross-motion to amend/correct the amended complaint. (Dkt. 24). On August 15, 2017, Defendants filed an attorney declaration and a memorandum of law in opposition to Plaintiff's motion to amend/correct and in further support of Defendants' motion to dismiss. (Dkt. 26). On August 23, 2017, Plaintiff filed a reply in further support of his motion to amend and in further opposition to Defendants' motion to dismiss. (Dkt. 27).

### DISCUSSION

### I. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual mat-

---

5. As further explained below, this is the date that Plaintiff notarized his initial complaint, and thus, it is the earliest date that Plaintiff could have filed this action under the "prison mailbox rule." *See, e.g., Houston v. Lack*, 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). The initial complaint was actually filed on August 18, 2016. (Dkt. 1).

6. Like Judge Larimer, the undersigned's duty station is in Rochester, New York. However, the undersigned presently accepts assignments of cases filed in Buffalo, New York.

ter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Rochester Drug Co-op., Inc. v. Biogen Idec U.S.*, 130 F.Supp.3d 764, 769 (W.D.N.Y. 2015). "In defending against a motion to dismiss, 'a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.'" *Oldfield v. Vill. of Dansville*, 583 F.Supp.2d 440, 442 (W.D.N.Y. 2008) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

█ In evaluating the complaint, a court must accept as true all of the plaintiff's factual allegations, and must draw all inferences in the plaintiff's favor. *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003). "Further, when the plaintiff proceeds *pro se*, as in this case, a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). In addition, "[i]t is well-settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotations and citation omitted). Moreover, "a *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984).

## II. Plaintiff's First Claim is Barred by the Statute of Limitations

### A. *Heck v. Humphrey* Does Not Apply to Plaintiff's First Cause of Action

█ Plaintiff's first claim alleges that he was deprived of his Fourteenth Amendment right to due process when he was designated a DSO without the benefit of a hearing. (Dkt. 7 at 6). The Court notes that it is an unsettled question in this Circuit as to whether a prisoner holds a liberty interest in being designated as a DSO. *Singleton v. Doe*, 210 F.Supp.3d 359, 367 (E.D.N.Y. 2016) ("The Court is unaware of any Second Circuit federal court determination that addresses a parolee's liberty interest in being free from a discretionary sex offender designation."); *Gordon v. Semrug*, No. 14-CV-324S, 2017 WL 2241966, at *6 (W.D.N.Y. May 23, 2017) ("But although a prisoner or parolee may have a liberty interest in avoiding the stigma and tangible impairment associated with a registered sex offender designation, neither the Second Circuit nor the Supreme Court has made clear that the interest extends to a DSO designation."). In any event, Defendants argue that Plaintiff's claim is barred by *Heck v. Humphrey* and the applicable statute of limitations for § 1983 causes of action. (Dkt. 12–1 at 3–4).

In *Heck*, the Supreme Court prohibited plaintiffs from using a §. 1983 cause of action as a collateral attack upon a prior conviction or sentence. 512 U.S. at 486, 114 S.Ct. 2364 ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement...."). In doing so, the Court held:

[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must

consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Id.* at 487, 114 S.Ct. 2364 (footnotes omitted); *see Muhammad v. Close,* 540 U.S. 749, 751, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004) (stating that *Heck* requires that "the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence.").

Whether or not Plaintiff was entitled to a due process hearing regarding his DSO designation does not necessarily imply the invalidity of his prior conviction or sentence. Plaintiff takes issue with the fact that he was not privileged to a hearing in which this designation was established. (Dkt. 7 at 6). By interpreting Plaintiff's claims "to raise the strongest arguments that they suggest," *Green,* 260 F.3d at 83 (quotations and citations omitted), the Court construes Plaintiff's allegations as an assault upon the process used, and not necessarily the result produced. *See Heck,* 512 U.S. at 482–83, 114 S.Ct. 2364 (stating that a § 1983 "claim for using the wrong procedures, not for reaching the wrong result ... did *not* call into question the lawfulness of the plaintiff's continuing confinement"); *see also Spencer v. Kemna,* 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d

43 (1998) ("If, for example, petitioner were to seek damages for using the wrong procedures, not for reaching the wrong result, and if that procedural defect did not necessarily imply the invalidity of the revocation, then *Heck* would have no application all." (internal quotations and citations omitted)); *Jenkins v. Haubert,* 179 F.3d 19, 26 (2d Cir. 1999) (finding that "[t]he majority opinion [in *Spencer* ] suggested in dictum, however, that § 1983 might be available if [the plaintiff] challenged the procedures used by the Board of Parole, rather than its result. . . ."). Therefore, the Court does not find that Plaintiff's due process argument falls within the universe of claims barred by *Heck,* permitting Plaintiff's claim to proceed "in the absence of some other bar to the suit." *Heck,* 512 U.S. at 487, 114 S.Ct. 2364.

### B. Application of the Statute of Limitations

▮▮▮ "Section 1983 actions in New York are subject to a three-year statute of limitations, running from the time a plaintiff knows or has reason to know of the injury giving rise to the claim." *Milan v. Wertheimer,* 808 F.3d 961, 963 (2d Cir. 2015) (internal quotations and citations omitted). "In calculating this period, courts assume, pursuant to the 'prison mailbox' rule, that a pleading is filed when it is given to prison officials." *Gordon,* 2017 WL 2241966, at *4 (quoting *Houston v. Lack,* 487 U.S. 266, 276, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)). Plaintiff's initial complaint was notarized on August 15, 2016 (Dkt. 1 at 9), which is the earliest date that Plaintiff could have provided the pleading to prison officials. *Gordon,* 2017 WL 2241966, at *4.[7] Accordingly, August 15,

---

**7.** Although Plaintiff is no longer incarcerated, a review of Plaintiff's amended complaint reveals that he was returned to Parole on August 18, 2016 (Dkt. 7 at 12); thus, without any indication to the contrary, it is presumed

2016, is considered the date that Plaintiff provided the initial complaint to prison officials and commenced this action for purposes of the statute of limitations.

The amended complaint indicates that Plaintiff was informed of his DSO status on or about the date of his initial release to Parole, March 28, 2012. (Dkt. 7 at 6). Plaintiff's own allegations demonstrate that he knew or had reason to know of the purported constitutional violation because he immediately indicated to the parole officers that he believed this designation was made in violation of his due process rights. (*Id.*); *see Milan*, 808 F.3d at 963. On its face, Plaintiff's action—which was initiated on August 15, 2016—was untimely commenced more than three years after the accrual of his claim.

Plaintiff also alleges that upon his release back to Parole on March 3, 2014, PO Himmelbach "continued the same supervision as [was imposed on his] first released." (Dkt. 7 at 7). Plaintiff expresses that he informed PO Himmelback that he was not provided with due process on either his first or second release to Parole supervision. (*Id.*). Plaintiff's second claim as stated in the amended complaint—while referencing his continued DSO classification—is based upon his August 21, 2014, violation of his parole conditions restricting his access to a smartphone, not his DSO designation. (*Id.* at 7–8 ("Constitutional Claim ... Plaintiff was denied [F]irst, [F]ourteenth [A]mendment rights by denying access to the internet which has no connection to my 1989 plea, there was no internet then. [B]ut now there is nothing not connected to the internet and by not allowing [P]laintiff to access [sic] internet is cutting him off from family, work. Due process, procedural and actual. Deliberate indifference.")).

However, "[b]ecause Plaintiff's *pro se* status mandates a liberal reading of h[is] papers, the facts of this case and the sufficiency of Plaintiff's pleadings are determined by reference to both Plaintiff's amended complaint and h[is] opposition to the instant motion." *Palmer v. Shchegol*, No. 14-CV-04406 (LDH/MDG), 2016 WL 5678544, at *1 n.1 (E.D.N.Y. Sept. 30, 2016) (collecting cases); *see Mil'chamot v. N.Y.C. Hous. Auth.*, No. 15 CIV. 108 (PAE), 2016 WL 659108, at *1 n.1 (S.D.N.Y. Feb. 16, 2016) ("[B]ecause a *pro se* plaintiff's allegations must be construed liberally, it is appropriate to consider factual allegations made in a *pro se* plaintiff's opposition papers, *so long as the allegations are consistent with the complaint.*" (emphasis added)). In response to Defendants' statute of limitations defense, Plaintiff responds with the following argument: "Plaintiff is suffering an on going [sic] injury. Every time [P]laintiff has been re-incarcerated and released he has suffered *the same conditions re-imposed,* therefore, [P]laintiff [sic] last release dates were March 2014 and August 2016, which is [sic] both within the three year Statute [sic] of this filing." (Dkt. 24 at 1–2 (emphasis added)).

Therefore, the Court will also consider whether the continuing violation doctrine applies to Plaintiff's first claim, and whether Plaintiff has successfully stated a separate due process claim regarding his continued classification as a DSO. The Court answers both questions in the negative.

**C. The Continuing Violation Doctrine Does Not Apply to Plaintiff's First Claim, and Plaintiff Has Not Sufficiently Stated An Alternative Due Process Cause of Action**

 When reviewing a complaint asserting a § 1983 cause of action,

that Plaintiff was incarcerated at the time he

filed his initial complaint.

where the alleged constitutional violation results in an improper restraint on a plaintiff's protected liberty interest, assuming [a p]laintiff has such an interest, ... [the claim] accrues for purposes of the applicable three-year statute of limitations when the restraint is *initially imposed* ... and not when a subsequent violation by a defendant, based on the same, initial unconstitutional conduct, occurs.

*Gordon v. Parole Officer Semrug*, No. 14-CV-324S(F), 2016 WL 259579, at *4 (W.D.N.Y. Jan. 21, 2016) (emphasis added). "The chief purpose of the [continuing violation] doctrine is to protect the rights of plaintiffs where 'the earlier discrimination may only be recognized as actionable in the light of events that occurred later.'" *Keddy v. Smith Barney, Inc.*, No. 96 CIV. 2177 DABSEG, 2000 WL 193625, at *3 (S.D.N.Y. Feb. 16, 2000) (quoting *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996)).

In *Gordon v. Semrug*, No. 14-CV-324S, 2017 WL 2241966 (W.D.N.Y. May 23, 2017), the plaintiff "was designated as a DSO on three occasions, immediately prior to his release on parole in August 2009, August 2010, and June 2013," but was not informed of this designation until the second occasion in August 2010. *Id.* at *4. However, these three designations were not considered "a series of individual acts that, when taken together, amount[ed] to a violation of constitutional rights." *Id.* at *5. Since "the individual occurrences where he was designated as a DSO [were each] ... akin to a 'one time act with continued consequences,'" the statute of limitations was not tolled under the continuing violation doctrine. *Id.* (quoting *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003)).

 Likewise, Plaintiff's DSO "restraint" was "initially imposed" on or about March 28, 2012, at which time Plaintiff was aware of the purported constitutional violation. *Milan*, 808 F.3d at 963; *see Gordon*, 2016 WL 259579, at *4 ("[The p]laintiff's due process claim (as well as his Fourth and Eighth Amendment claims) against the [d]efendants accrued when [the p]laintiff first was informed of [the d]efendants['] ... decision to impose his [DSO] Designation on August 26, 2010, more than three years prior to the filing of [the p]laintiff's motion to amend on June 1, 2015, and the receipt of the Proposed Amended Complaint on June 26, 2015."). The fact that Plaintiff was subsequently released upon the "same conditions" that had been imposed on or about March 28, 2012, does not toll the running of the limitations period because the initial designation was a "one time act with continued consequences." *Gordon*, 2017 WL 2241966 at *4–5 (citation omitted). Therefore, the continuing violation doctrine does not toll the running of the limitations period for Plaintiff's first cause of action.

 Furthermore, Plaintiff cannot save his due process claim by pointing to his continued classification as a DSO upon his release to Parole supervision in March of 2014 and August of 2016. In *Gordon v. Parole Officer Semrug*, No. 14-CV-324S(F), 2016 WL 259579 (W.D.N.Y. Jan. 21, 2016), the plaintiff sought leave to file a proposed amended complaint asserting a Fourteenth Amendment due process claim against the defendant parole officers for failing to provide the plaintiff with a hearing in which the plaintiff could controvert his DSO designation. *Id.* at *4. In essence, the plaintiff alleged the same claim that is raised in this action. The plaintiff was *initially* classified as a DSO on August 26, 2010, which was "more than three years prior to the filing of [the p]laintiff's motion to amend on June 1, 2015, and the receipt of the [p]roposed [a]mended [c]omplaint on June 26, 2015." *Id.* The plaintiff had subse-

quently violated his parole conditions and his parole was revoked. *Id.* Although the plaintiff alleged that "after serving a period of an additional 15 months of incarceration for such violations, upon his later release to [P]arole on June 6, 2013, he was again classified ... as a [DSO] resulting in another parole violation," this allegation did not change the conclusion that the plaintiff's due process claim accrued on August 26, 2010. *Id.* As a result, the *Gordon* plaintiff's "§ 1983 claims ... [were] time-barred and, as such, [were] futile[, and] ... [the p]laintiff's further parole violation in 2013, does not, for the same reason, postpone the accrual of [the p]laintiff's ... Fourteenth Amendment Due Process claims." *Id.*

In applying *Gordon* to the substantially similar factual allegations presented by Plaintiff's amended complaint and his opposition papers, the Court reaches the same conclusion in this action. Assuming Plaintiff has a liberty interest in being free from a DSO classification, the "restraint" upon this interest was "initially imposed" on or about March 28, 2012, when it was first determined that Plaintiff would be designated as a DSO and subject to various sex offender supervision restrictions— apparently due to the nature of his 1989 conviction. (Dkt. 7 at 6–7). Plaintiff's due process claims accrued for purposes of this

§ 1983 action on that date. *See Milan,* 808 F.3d at 963; *Gordon,* 2017 WL 2241966 at *4–5; *Gordon,* 2016 WL 259579, at *4. Plaintiff's subsequent violations of his parole conditions—specifically the requirement to seek sex offender treatment and his possession of a smartphone device— resulted in the revocation of his supervised release. (Dkt. 7 at 6–7). Although Plaintiff was allegedly classified as a DSO upon each release to Parole supervision without the benefit of a hearing, in Plaintiff's own words, the Parole Officers merely "continued the same supervision as [his] first release" (*id.* at 7) through "the same conditions re-imposed" (Dkt. 24 at 1).

■ Therefore, because "a § 1983 claim based on alleged constitutional violations accrues for purposes of the applicable three-year statute of limitations when the restraint is initially imposed, ... and not when a subsequent violation by a defendant, based on the same, initial unconstitutional conduct, occurs," any Fourteenth Amendment due process claim challenging the process afforded to Plaintiff prior to his DSO classification accrued on or about March 28, 2012. *Gordon,* 2016 WL 259579, at *4. As such, to the extent that Plaintiff alleges that his DSO designation violated his right to due process, this claim is barred by the applicable statute of limitations and is dismissed with prejudice.[8]

---

8. Liberally construed, Plaintiff's amended complaint also appears to argue that Plaintiff's Fifth Amendment double jeopardy protections were compromised after his parole was revoked and he was re-incarcerated due to the violation of parole conditions related to a 1989 conviction for which he had fully served his sentence. (Dkt. 7 at 6). The date upon which Plaintiff was incarcerated for this parole violation is somewhat unclear. Nevertheless, Plaintiff alleges in his second claim that he was released back to Parole's supervision on March 3, 2014, "12 months" after he had violated his parole conditions. (*Id.* at 7). Assuming that Plaintiff was incarcerated on March 3, 2013, this event would have oc-

curred over three years before he commenced this action on August 15, 2016. Accordingly, this ground for relief is also barred by the statute of limitations. Moreover, double jeopardy concerns do not implicate parole revocations. *See Robinson v. New York,* No. 09–CV-0455 (GLS*RFT), 2010 WL 11507493, at *4 (N.D.N.Y. Mar. 26, 2010) ("There is no question, however, that imposition of parole conditions—like the decision to deny or revoke parole—does not implicate the Double Jeopardy Clause because they are not additional to but rather are part of the original sentence.") (citing cases); *Jones v. Fraser,* No. 96 CV 5484, 1998 WL 355341, at *4 (E.D.N.Y. May

### III. Plaintiff's Second Claim is barred by *Heck v. Humphrey*

 Plaintiff also claims that his First and Fourteenth Amendment rights have been violated by the imposition of the parole condition restricting his access to smartphones, and the internet in general.[9] (Dkt. 7 at 7–8). Plaintiff alleges that on August 21, 2014, he was discovered in possession of a smartphone, and "was violated for 24 months." (*Id.* at 7). Plaintiff has since returned to supervised release as of August 18, 2016. (*Id.* at 12).

 "[T]he Second Circuit has recognized that the *Heck* rule would not bar a Section 1983 claim in certain situations where habeas relief was unavailable." *Jean–Laurent v. Hennessy*, No. 05-CV-1155 (JFB) (LB), 2008 WL 5274322, at *3 (E.D.N.Y. Dec. 18, 2008); *see Jenkins*, 179 F.3d at 21 ("*Heck* and *Edwards* [*v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)] do not bar a § 1983 claim challenging the conditions of a prisoner's confinement where the prisoner is unable to challenge the conditions through a petition for federal habeas corpus."); *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) ("Because Leather is not and never was in the custody of the State, he, like Jenkins, has no remedy in habeas corpus."). The Court notes that although Plaintiff is no longer incarcerated, "[a]n individual on probation or parole is 'in custody' for purpose of federal habeas cor-

pus proceedings." *Rosato v. N.Y. Cty. Dist. Attorney's Office*, No. 09 CIV. 3742 (DLC), 2009 WL 4790849, at *4 (S.D.N.Y. Dec. 14, 2009) (citing cases); *see Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006) ("Post-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody.'").

However, *Heck*'s "favorable termination" requirement may remain applicable in certain instances where habeas relief is unavailable. For example, if the habeas remedy is a reasonable and practical option, a plaintiff's failure to diligently seek out this avenue of relief prevents a subsequent assertion of the *Jenkins/Leather* exception. *See Jean–Laurent*, 2008 WL 5274322, at *4 ("[T]he exceptions to the *Heck* rule do not apply because plaintiff clearly had legal remedies available to him both in state and federal court to challenge his conviction, but failed to avail himself of such remedies in a timely manner."); *see also Teichmann v. New York*, 769 F.3d 821, 828 (2d Cir. 2014) (Livingston, J., concurring) ("We have recognized an exception to *Heck*'s favorable termination requirement when habeas *was never reasonably available* to the plaintiff *through no lack of diligence on his part*—that is, where an action under § 1983 *was a diligent plaintiff's only* opportunity to challenge his conviction in a federal forum." (emphases added)); *Sanders v. Williams*,

---

8, 1998) ("Petitioner argues that the revocation of his parole and his subsequent incarceration violates the double jeopardy clause and amounts to cruel and unusual punishment. The double jeopardy clause does not apply to parole proceedings or parole revocation." (citing *Priore v. Nelson*, 626 F.2d 211, 217 (2d Cir. 1980) ("The Double Jeopardy Clause applies to judicial proceedings, not parole."))). Insofar as Plaintiff alleges that his Fifth Amendment right to be free from double jeopardy was violated, this allegation is also dismissed with prejudice.

9. Plaintiff also uses the phrase "Deliberate indifference" which, liberally construed, appears to reference a claim under the Eighth Amendment for cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.").

No. 14-CV-7210 (PAC)(MHD), 2015 WL 7963135, at *5 (S.D.N.Y. Nov. 10, 2015) (noting that *Heck* was not applicable because "[the] plaintiff did not have the *practical* ability to pursue habeas relief from his thirty-day sentence" (emphasis added)), *report and recommendation adopted*, No. 14-CIV-7210 (PAC) (MHD), 2015 WL 8073810 (S.D.N.Y. Dec. 4, 2015).

Whereas the plaintiff in *Jenkins* had a mere thirty days to seek habeas relief, and the plaintiff in *Leather never* had the opportunity to avail himself of habeas relief, here, Plaintiff was allegedly revoked to "24 months" of incarceration after he violated his parole conditions. (Dkt. 7 at 7). Although Plaintiff alleges that he exhausted his administrative remedies by appealing Parole's decisions (*id.* at 6–7), there is no indication that Plaintiff availed himself of habeas relief.

> Such a situation is distinct from the individual who challenges his conviction in the state and federal courts in a timely manner but, through no fault of his own, is unable to have the federal court consider his challenge because he is no longer in custody at the time his petition is filed. To hold otherwise in the instant case would allow a plaintiff to completely circumvent the *Heck* rule by filing an untimely habeas petition and then arguing that his Section 1983 claims are not barred by the conviction because his challenge was never heard on the merits by the federal court.

*Jean–Laurent*, 2008 WL 5274322, at *4.

"Federal courts have held that *Heck* applies to Section 1983 actions that challenge the fact or duration of confinement based on the revocation of parole." *Davis v. Cotov*, 214 F.Supp.2d 310, 316 (E.D.N.Y. 2002). "Courts have applied *Heck* to prevent a state prisoner from bringing a Section 1983 action challenging a parole revocation unless that revocation decision is reversed or the underlying conviction is set aside." *Lee v. Donnaruma*, 63 Fed. Appx. 39, 41 (2d Cir. 2003).

Although no longer incarcerated, Plaintiff remains under supervised release, and thus, he remains in "custody" for purposes of the habeas corpus statute. *See Earley*, 451 F.3d at 75; *Rosato*, 2009 WL 4790849, at *4. Furthermore, since Plaintiff has had over two years to seek habeas relief, and has failed to do so, Plaintiff may not avail himself of the *Jenkins/Leather* exception to *Heck*. *See Jean–Laurent*, 2008 WL 5274322, at *4; *see also Teichmann*, 769 F.3d at 828 (Livingston, J., concurring). Moreover, Plaintiff's claim is barred by *Heck* because a challenge to the constitutionality of these parole conditions under the First and Fourteenth Amendments "would necessarily imply the invalidity of his" parole revocation, which—according to Plaintiff's own allegations—was based upon the violation of the special condition that restricted his possession of a smartphone during his supervised release. *See Robinson v. NYS Dep't of Corr. Servs.*, No. 9:08-CV-0911, 2008 WL 4560098, at *2 (N.D.N.Y. Oct. 8, 2008) (holding that the plaintiff's "challenge to the terms and conditions of his supervised release" was barred under *Heck*); *Harris v. City of New York*, No. 01 CIV. 6927 (LAP), 2003 WL 554745, at *3 (S.D.N.Y. Feb. 26, 2003) (dismissing the plaintiff's section 1983 claim pursuant to *Heck* insofar as he challenged "the basis" for the parole revocation determination). Since Plaintiff has not established that the parole revocation has been invalidated, or that his underlying conviction has been set aside, Plaintiff cannot assert a § 1983 claim as an improper collateral attack upon the validity of his August 21, 2014, parole revocation. *See, e.g., Lee*, 63 Fed.Appx. at 41; *Hannah v. Davis*, No. 08-CV-0116F, 2008 WL 516750, at *2 (W.D.N.Y. Feb. 25, 2008). Further-

more, the fact that Plaintiff seeks damages as well as injunctive relief does not alter the outcome. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (holding that a § 1983 action is barred "no matter the relief sought (damages or equitable relief) ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration").

Therefore, Plaintiff's second cause of action is dismissed without prejudice under the principles articulated in *Heck*. *See Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) (stating that a dismissal under *Heck* "warrants only dismissal without prejudice, because the suit may be reinstituted should [the] plaintiff's conviction be 'expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus'" (quoting *Heck*, 512 U.S. at 487, 114 S.Ct. 2364)).

■ "Ordinarily, given Plaintiff's *pro se* status, the Court would recommend that he be given an opportunity to amend prior to an outright dismissal." *Godley v. Onondaga Cty.*, No. 6:16-CV-01419 (DNH/TWD), 2017 WL 2805162, at *6 (N.D.N.Y. Jan. 6, 2017), *report and recommendation adopted*, No. 5:16-CV-1419 (DNH/TWD), 2017 WL 2804944 (N.D.N.Y. June 28, 2017). "However, leave to amend is not required if it would be futile." *Johnson v. N.Y.C. Police Dep't*, 651 Fed.Appx. 58, 61 (2d Cir. 2016); *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("[A] futile request to replead should be denied."). "[T]he *Heck* rule bars [a] plaintiff's claims until the underlying conviction is invalidated, and thus providing the plaintiff with an opportunity to amend the complaint is futile until such time that the state court conviction is reversed, invalidated by a federal writ of habeas corpus,

or otherwise expunged or declared invalid." *Cruz v. Reilly*, No. 08-CV-1245 JFB AKT, 2009 WL 2567990, at *7 (E.D.N.Y. Aug. 18, 2009); *Smythe v. Nolley*, No. 95-CV-208S, 1997 WL 714238, at *7 (W.D.N.Y. Sept. 12, 1997) ("[L]eave to replead has already been granted in this case, and further leave to replead a claim under § 1983 would be futile because [the] plaintiff cannot demonstrate that his state court conviction has been independently invalidated, as *Heck v. Humphrey* requires him to do.").

Therefore, because even the most liberal reading of Plaintiff's allegations does not suggest that a valid claim could be stated at this time, in view of the requirements of *Heck*, leave to amend will not be granted as it would be futile at this time.

## IV. Plaintiff's Motion to Amend is Denied

■ Rule 15 of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.*

■ "'An amended pleading is one which clarifies or amplifies a cause of action which can be identified with certainty *as the same cause of action originally pleaded or attempted to be pleaded*, and it is a perfection of an original pleading *rather than the establishment of a new cause of action.*'" *Klos v. Haskell*, 835 F.Supp. 710, 715 n.3 (W.D.N.Y. 1993) (emphases added) (quoting *Superior Mfg. Corp. v. Hessler Mfg. Co.*, 267 F.2d 302, 304 (10th Cir. 1959)), *aff'd*, 48 F.3d 81 (2d Cir. 1995).

By contrast, "[a] supplemental pleading is designed to cover matters that occur subsequent to the filing of the complaint, but pertain to the original pleadings." *Albrecht v. Long Island R.R.*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991). "The court may, pursuant to Fed. R. Civ. P. 15(d), permit a party, upon motion, 'to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.'" *Klos*, 835 F.Supp. at 715 (quoting *Albrecht*, 134 F.R.D. at 41). "Rule 15(d) *limits* a supplemental pleading to the presentation of subsequent matter *related to* the claim or defense presented in the original pleading. Such relief may include the addition of new defendants *and new claims*, if *adequately related* to the originally stated claims." *McLean v. Scully*, No. 90 CIV. 2590 (SWK), 1991 WL 274327, at *1 (S.D.N.Y. Dec. 9, 1991) (emphases added) (quotations and citations omitted).

■■■ Plaintiff has characterized his motion as an application "to amend his complai[n]t." (Dkt. 24 at 1). Plaintiff requests leave to assert a claim for "denial to practice his religion" because his "parole officer" instructed him "not to participate in Ramadan ... if women and children did." (*Id.*). Plaintiff states that he had been "observing Juma services every Friday which is the obligation of every [M]uslim man and woman[, but n]ow [he] fear[s] going to Juma services." (*Id.*). Plaintiff does not indicate whether this "parole officer" can be identified as any one of the presently named Defendants in the amended complaint.

Defendants make several arguments in opposition to Plaintiff's motion to amend, including that Plaintiff seeks to allege "new allegations, potentially against entirely different defendants, on a different set of issues," which may or may not relate to the amended complaint. (Dkt. 26 at 1–2).

The Court agrees with Defendants' position.

Here, Plaintiff's motion "to amend" seeks relief more accurately found in a motion to supplement his pleading under Rule 15(d) of the Federal Rules of Civil Procedure. Plaintiff does not seek to bolster, amplify, or clarify the two claims alleged in his amended complaint; rather, he seeks to raise an entirely new constitutional claim under the First Amendment for the denial of his right to freely exercise his religion. (Dkt. 24 at 1). Although Plaintiff has failed to state a viable cause of action in his amended complaint, this alone does not preclude Plaintiff from seeking such relief. Fed. R. Civ. P. 15(d) ("The court may permit supplementation even though the original pleading is defective in stating a claim or defense."). However, the new cause of action must be related to the allegations in the original complaint. *See, e.g., Bartels v. Inc. Vill. of Lloyd Harbor*, No. 10-CV-5076 ADS GRB, 2012 WL 2576142, at *5 (E.D.N.Y. July 2, 2012) ("A party may supplement his or her pleading through Rule 15(d) to add new defendants and new claims, but only if 'adequately related to the originally stated claims.'" (quoting *McLean*, 1991 WL 274327, at *1)); *Andco Envtl. Processes, Inc. v. Niagara Envtl. Assocs., Inc.*, No. CIV-79-682, 1981 WL 40552, at *2 (W.D.N.Y. June 8, 1981) ("The purpose of rule 15(d) is to permit a litigant to present a subsequent matter related to the claim asserted in the original pleading.").

Plaintiff's proposed claim arises out of occurrences that purportedly took place years after the events underlying the claims in the amended complaint. (Dkt. 24 at 1 (stating that Plaintiff was told not to participate in Ramadan "[i]n the beginning of May")); *see Klos*, 835 F.Supp. at 716 (noting that "the proposed supplemental complaint discusses events that occurred a

year later ...”). Plaintiff's proposed claim—asserting that he was denied the right to freely exercise his religious preferences—is a wholly different cause of action from his prior allegations that raised due process and double jeopardy violations, as well as the wrongful deprivation of access to a smartphone. Plaintiff does not even indicate whether any of the presently named Defendants were allegedly involved in his new claim. “Thus ‘[t]here appears to be no linkage between’ the allegations set forth in” Plaintiff's amended complaint and his motion papers. *Klos*, 835 F.Supp. at 716 (quoting *McLean*, 1991 WL 274327, at *1). As such, Plaintiff's motion “fails to satisfy Rule 15(d) in that the subsequent accident is unrelated to the [amended] complaint.” *Albrecht*, 134 F.R.D. at 41.

Therefore, Plaintiff's motion to amend or supplement his amended complaint is denied without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. 12) is granted, Plaintiff's amended complaint (Dkt. 7) is dismissed, and Plaintiff's motion for leave to file an amended or supplemental complaint (Dkt. 24) is denied. The Clerk of Court is directed to close the case.

SO ORDERED.